LAKEVIEW COMMONS LIMITED PARTNERSHIP v
EMPOWER YOURSELF, LLC

Docket No. 291728. Submitted September 9, 2010, at Detroit. Decided
September 16, 2010. Approved for publication November 9, 2010,
at 9:00 a.m.

Lakeview Commons Limited Partnership filed suit in the Oakland
Circuit Court against Empower Yourself, L.L.C., Hamsa, L.L.C.,
and Troy and Phyllis Swalwell to collect payments due under a
lease to Empower, a fitness and yoga business owned by the
Swalwells. Empower breached the lease with plaintiff in August
2007. That same month, the Swalwells created Hamsa, L.L.C., also
a fitness and yoga business. The parties filed cross-motions for
summary disposition. The court, Rae Lee Chabot, J., granted both
motions in part and denied both motions in part, entering judg-
ment in favor of plaintiff against Empower, but denying plaintiff's
motion with respect to the other defendants. The court also
dismissed plaintiff's counts seeking to impose successor liability on
Hamsa and to pierce the corporate veils of Empower and Hamsa.
Plaintiff sought interlocutory appeal.

The Court of Appeals *held*:

1. The trial court erred by granting defendants summary
disposition on the issue of successor liability. The principles of
successor liability apply to limited liability companies as well as
corporations. Under those principles, if a predecessor company
acquires a successor by merger, the successor generally assumes
all of the predecessor's liabilities. If the purchase occurs by the
exchange of cash for assets, the successor is not liable for its
predecessor's liabilities unless an exception applies. The five
recognized exceptions are (1) when there was an express or
implied assumption of liability, (2) when the transaction
amounted to a consolidation or merger, (3) when the transaction
was fraudulent, (4) when some elements of a good-faith pur-
chase were lacking or the transfer was without consideration
and the predecessor's creditors were not provided for, and (5) when
the successor is a mere continuation or reincarnation of the prede-
cessor. A prima facie case of continuity of enterprise exists when
the plaintiff establishes the following: (1) a continuation

of the predecessor company, so that there was a continuity of management, personnel, physical location, assets, and general business operations of the predecessor, (2) that the predecessor ceased its ordinary business operations, liquidated, and dissolved as soon as legally and practically possible, and (3) that the successor company assumed those liabilities and obligations of the predecessor ordinarily necessary for the uninterrupted continuation of normal business operations of the predecessor. An additional relevant consideration is whether the successor held itself out to the world as the effective continuation of the predecessor. Plaintiff presented evidence that there had been a continuation in management, personnel, assets, and general business operations of Empower by Hamsa that was sufficient to raise a genuine issue of material fact regarding whether Hamsa was merely a continuation of Empower.

2. The trial court correctly found that there was no question of material fact regarding piercing the corporate veil. The elements for piercing the corporate veil apply to limited liability companies. Those elements are (1) that the business entity was a mere instrumentality of another individual or entity, (2) that the business entity was used to commit a wrong or fraud, and (3) that there was an unjust injury or loss to the plaintiff. The corporate forms of Empower and Hamsa were respected throughout, and the fact that part of the reason Empower ceased operations was to avoid the lease agreement with plaintiff was not alone sufficient to raise a genuine issue of material fact regarding whether Empower's or Hamsa's corporate veils should be pierced.

Affirmed in part, reversed in part, and remanded.

1. CORPORATIONS — LIMITED LIABILITY COMPANIES — SUCCESSOR LIABILITY.

Under the principles of successor liability, if a predecessor company acquires a successor by merger, the successor generally assumes all of the predecessor's liabilities; if the purchase occurs by the exchange of cash for assets, the successor is not liable for its predecessor's liabilities unless an exception applies; the five recognized exceptions are (1) when there was an express or implied assumption of liability, (2) when the transaction amounted to a consolidation or merger, (3) when the transaction was fraudulent, (4) when some elements of a good-faith purchase were lacking or the transfer was without consideration and the predecessor's creditors were not provided for, and (5) when the successor is a mere continuation or reincarnation of the predecessor.

2. CORPORATIONS — LIMITED LIABILITY COMPANIES — SUCCESSOR LIABILITY.

> A successor limited liability company can be held liable for its predecessor's liabilities when the successor is a mere continuation or reincarnation of the predecessor; a prima facie case of continuity of enterprise exists when the plaintiff establishes the following: (1) a continuation of the predecessor company, so that there is a continuity of management, personnel, physical location, assets, and general business operations of the predecessor, (2) that the predecessor ceased its ordinary business operations, liquidated, and dissolved as soon as legally and practically possible, and (3) that the successor assumed those liabilities and obligations of the predecessor ordinarily necessary for the uninterrupted continuation of normal business operations of the predecessor company; an additional relevant consideration is whether the successor held itself out to the world as the effective continuation of the predecessor.

3. CORPORATIONS — LIMITED LIABILITY COMPANIES — PIERCING THE CORPORATE VEIL.

> The elements for piercing the corporate veil apply to limited liability companies; those elements are (1) that the business entity is a mere instrumentality of another individual or entity, (2) that the business entity was used to commit a wrong or fraud, and (3) that there was an unjust injury or loss to the plaintiff.

*Maddin, Hauser, Wartell, Roth & Heller, P.C.* (by *Michelle C. Harrell*), for plaintiff.

*Law Office of Steiner & Steiner, PLLC* (by *Wilfred Eric Steiner*), for defendants.

Before: OWENS, P.J., and WHITBECK and FORT HOOD, JJ.

PER CURIAM. Plaintiff appeals by leave granted the trial court's order granting in part summary disposition in favor of defendants. We affirm in part and reverse in part.

This action arises out of a breached lease agreement between plaintiff and Empower Yourself, L.L.C. On appeal, plaintiff argues that the trial court erred by granting defendants' motion for summary disposition

because a genuine issue of material fact existed regarding (1) whether Hamsa, L.L.C., was a mere continuation of Empower and (2) whether the corporate veil of Empower and Hamsa should be pierced to hold defendants Troy Swalwell (Troy) and Phyllis Swalwell (Phyllis) personally liable. We agree that there was a genuine issue of material fact regarding whether Hamsa was the mere continuation of Empower, but held that there was no genuine issue of material fact regarding piercing the corporate veil.

This Court reviews de novo the grant or denial of a motion for summary disposition under MCR 2.116(C)(10). *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). A motion brought pursuant to MCR 2.116(C)(10) tests the factual support of a plaintiff's claim, and is reviewed by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. *Id*. Summary disposition is proper if there is "no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. There is a genuine issue of material fact when "reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). This Court considers only the evidence that was properly presented to the trial court in deciding the motion. *Peña v Ingham Co Rd Comm*, 255 Mich App 299, 310; 660 NW2d 351 (2003). Successor liability is derived from equitable principles and is reviewed de novo on appeal. *Zantel Mktg Agency v Whitesell Corp*, 265 Mich App 559, 568; 696 NW2d 735 (2005).

The basic rule in Michigan regarding successor liability is as follows:

The traditional rule of successor liability examines the nature of the transaction between predecessor and successor corporations. If the acquisition is accomplished by merger, with shares of stock serving as consideration, the successor generally assumes all its predecessor's liabilities. However, where the purchase is accomplished by an exchange of cash for assets, the successor is not liable for its predecessor's liabilities unless one of five narrow exceptions applies. The five exceptions are as follows:

"(1) where there is an express or implied assumption of liability; (2) where the transaction amounts to a consolidation or merger; (3) where the transaction was fraudulent; (4) where some of the elements of a purchase in good faith were lacking, or where the transfer was without consideration and the creditors of the transferor were not provided for; or (5) where the transferee corporation was a mere continuation or reincarnation of the old corporation." [*Foster v Cone-Blanchard Machine Co*, 460 Mich 696, 702; 597 NW2d 506 (1999), quoting *Turner v Bituminous Cas Co*, 397 Mich 406, 417 n 3; 244 NW2d 873 (1976) (citations and quotation marks omitted).]

Furthermore, *Foster* explained the "mere continuation" doctrine:

After examining the relevant policy concerns, this Court in *Turner* concluded that a continuity of enterprise between a successor and its predecessor may force a successor to "accept the liability with the benefits" of such continuity. *Turner* held that a prima facie case of continuity of enterprise exists where the plaintiff establishes the following facts: (1) there is continuation of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations of the predecessor corporation; (2) the predecessor corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and (3) the purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the selling corporation. *Turner* identified as an

additional principle relevant to determining successor liability, whether the purchasing corporation holds itself out to the world as the effective continuation of the seller corporation. [*Foster*, 460 Mich at 703-704 (citation omitted).]

This Court recently held in *RDM Holdings, Ltd v Continental Plastics Co*, 281 Mich App 678, 717-719; 762 NW2d 529 (2008), that successor liability applies to corporations and limited liability companies in purely commercial contexts, such as a breach of a lease agreement. In *RDM Holdings*, the plaintiff was a commercial business that entered into a lease agreement with Continental-Lighting, L.L.C. (Lighting). Lighting filed for bankruptcy and, subsequently, Continental-Coating, L.L.C. (Coating), was created. The trial court granted summary disposition, finding no genuine issue of material fact regarding whether Coating was liable for the breach of the lease agreement under a successor-liability theory. This Court reversed, concluding that the plaintiff had presented sufficient evidence to create a genuine issue of material fact because the plaintiff had presented evidence reflecting a continuation in management, personnel, assets, and general business operations of Lighting by Coating. *Id.* at 682-683, 718-719.

In looking at the record in the light most favorable to plaintiff, there was a genuine issue of material fact regarding whether Hamsa was the mere continuation of Empower. Empower ceased operations in August 2007, the same month in which Hamsa was created. Both Empower and Hamsa were in the business of health, fitness, personal training, and yoga. Empower and Hamsa served the same geographic area, Oakland County. Empower and Hamsa operated in the same manner. Both provided a venue for independent-contractor yoga teachers to teach classes to students.

Phyllis owned 80 percent and Troy owned 20 percent of both Empower and Hamsa. Phyllis was the president and managing member of both Empower and Hamsa, and Troy was the vice president and registered agent of both Empower and Hamsa. Troy also signed the annual reports and prepared the tax returns for both Empower and Hamsa. Empower and Hamsa did not keep a corporate minute book or an operating agreement. Both held informal meetings and did not keep minutes from the informal meetings. Neither Empower nor Hamsa distributed earnings to its members. Troy and Phyllis were signatories on both Empower's and Hamsa's bank accounts. Empower's business telephone number became Hamsa's business telephone number. Empower had a website from 2004 until 2007. Then, in 2007, Hamsa created a website. Hamsa's website stated that Hamsa was formerly known as Empower and gave details on its new location. Reasonable minds could differ regarding whether Hamsa was the mere continuation of Empower. Therefore, the record provided raised a genuine issue of material fact regarding whether Hamsa was merely a continuation of Empower.

Plaintiff also argues there was a genuine issue of fact regarding whether the corporate veil of Empower and Hamsa should be pierced. An appellate court's review of a decision not to pierce the corporate veil is de novo because of the equitable nature of the remedy. *Foodland Distrib v Al-Naimi*, 220 Mich App 453, 456; 559 NW2d 379 (1996).

In general, "the law treats a corporation as an entirely separate entity from its stockholders, even where one person owns all the corporation's stock." *Id.* However, the courts can ignore this corporate fiction when it is invoked to subvert justice. *Id.* Traditionally, the "basis for piercing the corporate veil has been to

protect a corporation's creditors where there is a unity of interest of the stockholders and the corporation and where the stockholders have used the corporate structure in an attempt to avoid legal obligations." *Id.*

Piercing the corporate veil requires the following elements: (1) the corporate entity is a mere instrumentality of another individual or entity, (2) the corporate entity was used to commit a wrong or fraud, and (3) there was an unjust injury or loss to the plaintiff. *Rymal v Baergen*, 262 Mich App 274, 293-294; 686 NW2d 241 (2004). "There is no single rule delineating when a corporate entity should be disregarded, and the facts are to be assessed in light of a corporation's economic justification to determine if the corporate form has been abused."[1] *Id.* at 294.

Looking at the evidence in the light most favorable to plaintiff, there is no genuine issue of material fact regarding whether Empower's or Hamsa's corporate veils should be pierced. The corporate forms of Empower and Hamsa were respected. Troy stated that the activities of Empower and Hamsa were not commingled. Empower paid its bills through its bank account, and Hamsa paid its bills through its bank account. Empower and Hamsa each filed separate state and federal tax returns. Troy stated that the rent and other expenses incurred by Empower exceeded its revenue, so he personally loaned Empower about $100,000. Troy would directly deposit the loaned money into Empower's bank account, and then Empower itself would pay its monthly bills. Additionally, Troy personally paid for various assets of Empower, and then upon Empower's ceasing operations, he left those assets with

---

[1] This Court applied these same rules to determine whether the corporate veil of a limited liability company should be pierced. *RDM Holdings*, 281 Mich App at 715.

Empower. Troy stated that any check written to Troy or Phyllis by Empower was for the partial repayments of Troy's loans. Troy stated that he personally paid for Empower's leased vehicle for his personal use after Empower ceased operations. Additionally, the record does not show that plaintiff will suffer an unjust loss because plaintiff already has a valid judgment against Empower for breaching the lease agreement. While Troy admitted that part of the reason Empower ceased operations was to avoid the lease agreement with plaintiff, this alone was not sufficient to raise a genuine issue of material fact regarding whether Empower's or Hamsa's corporate veils should be pierced.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.