# STATE OF MICHIGAN

# COURT OF APPEALS

EJLL LUMAJ,

Plaintiff-Appellant,

v

EDWARD J. WALKER, TOWER
INTERNATIONAL, INC., TOWER DEFENSE &
AEROSPACE, LLC, AND TOWER
INTERNATIONAL REAL ESTATE COMPANY,
LLC,

Defendants-Appellees.

UNPUBLISHED
February 16, 2016

No. 323786
Wayne Circuit Court
LC No. 12-003518-CK

Before: SERVITTO, P.J., and SAAD and O'BRIEN, JJ.

PER CURIAM.

Plaintiff, Ejll Lumaj, appeals as of right the trial court's February 25, 2014 opinion denying his motion for summary disposition and granting summary disposition in favor of defendants, Edward J. Walker, Tower International, Inc., Tower Defense & Aerospace, LLC, and Tower International Real Estate Company, LLC, pursuant to MCR 2.116(I)(2). We affirm.

## I. BACKGROUND

Plaintiff was employed by Metal and Welding Industries, Inc., W Industries, Inc., W Aerospace, Inc., and M&W Industries (collectively, W Industries) from August 2008 until March 2009. Defendant Edward J. Walker was the principal shareholder, officer, and director of W Industries at the time of plaintiff's employment. After his employment was terminated, plaintiff filed a wrongful-termination lawsuit against W Industries. While the lawsuit was pending, Tower International, Inc., Tower Defense & Aerospace, LLC, and Tower International Real Estate Company, LLC (collectively, the Tower defendants) purchased the first-priority, secured debt of W Industries from JP Morgan Chase. At the time of purchase, W Industries owed JP Morgan Chase an amount much greater than the value of W Industries' assets. W Industries ultimately defaulted on the loans, and the Tower defendants sued W Industries for a breach of the loan agreements. Shortly before the Tower defendants sued W Industries, plaintiff filed a motion seeking an injunction against W Industries to prevent the transfer of any assets from W Industries. However, before that motion was heard, an asset-purchase agreement was entered into between the Tower defendants and W Industries (as well as several other entities related to

-1-

W Industries). Under the asset-purchase agreement, W Industries agreed to transfer almost all of its assets to the Tower defendants in exchange for the forgiveness of its first-priority, secured debt. Simultaneously, the Tower defendants also entered into a non-compete agreement with Walker. Under the non-compete agreement, Walker was paid a sum of money in exchange for his agreement to refrain from any activity that would threaten the Tower defendants' use of W Industries' assets.

Two months after the asset-purchase agreement and non-compete agreement were executed, plaintiff and W Industries entered into a consent judgment in the wrongful-termination lawsuit. Under the consent judgment, W Industries was liable to plaintiff in the amount of $341,000 plus statutory interest and reasonable costs in collecting on the judgment. After unsuccessfully pursuing garnishment against the Tower defendants, see *Lumaj v Metal and Welding Industries Inc*, unpublished order the Court of Appeals, entered June 1, 2012 (Docket No. 307455), plaintiff filed the instant lawsuit against the Tower defendants and Walker. Plaintiff's five-count complaint alleged (1) that the payment to Walker under the non-compete agreement constituted an unlawful distribution to a shareholder under the Michigan Business Corporations Act, MCL 450.1101, *et seq*., (2) that the payment to Walker under the non-compete agreement constituted a fraudulent transfer under the Michigan Uniform Fraudulent Transfer Act, MCL 566.31, *et seq*., (3) civil conspiracy, (4) that Walker breached his fiduciary duty to plaintiff, and (5) that the Tower defendants were liable under a successor-liability theory. After the parties exchanged various summary-disposition motions, the trial court eventually entered a written opinion granting summary disposition to defendants pursuant to MCR 2.116(I)(2) and dismissing plaintiff's claims. This appeal followed.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

A trial court's decision on a motion for summary disposition, including a grant of summary disposition pursuant to MCR 2.116(I), is reviewed de novo. *Sharper Image Corp v Dep't of Treasury*, 216 Mich App 698, 701; 550 NW2d 596 (1996). A trial court has the authority to grant summary disposition to a party opposing a motion for summary disposition if it is apparent to the trial court that the opposing party is entitled to judgment as a matter of law. MCR 2.116(I)(2). Issues of statutory interpretation, *Odom v Wayne Co*, 482 Mich 459, 467; 760 NW2d 217 (2008), and contract interpretation, *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 611; 792 NW2d 344 (2010), are likewise reviewed de novo.

### B. CONSENT JUDGMENTS GENERALLY

On appeal, the essence of plaintiff's arguments is that the consent judgment he entered into with W Industries should be enforceable against the Tower defendants and Walker individually. The consent judgment itself indicates otherwise. A consent judgment is construed as a contract. *Inverness Mobile Home Community, Ltd v Bedford Twp*, 263 Mich App 241, 248; 687 NW2d 869 (2004). "The rights and duties of parties to a contract are derived from the terms of the agreement." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 62; 664 NW2d 776 (2003). When contractual language is clear, it must be interpreted according to its plain and ordinary meaning. *Alpha Capital Mgt, Inc*, 287 Mich App at 611.

In this case, the consent judgment's language at issue is clear:

> IT IS HEREBY ORDERED that a judgment is entered against [Metal and Welding Industries, Inc., W Industries, Inc., W Aerospace, Inc., and M&W Industries], jointly and severally, in the amount of $341,000.00, plus statutory interest and all reasonable costs in having to collect on this judgment.

There is nothing in the consent judgment implicating the Tower defendants or Walker individually. Thus, as plaintiff acknowledges, the consent judgment is not enforceable against the Tower defendants or Walker individually unless an alternative theory is proven.

## C. SUCCESSOR LIABILITY

Plaintiff primarily seeks to hold the Tower defendants liable under a successor-liability theory. Whether successor liability applies depends on the nature of the transaction between predecessor and successor corporations. *Lakeview Commons Ltd Partnership v Empower Yourself, LLC*, 290 Mich App 503, 507; 802 NW2d 712 (2010). If the transaction is accomplished with shares of stock serving as consideration, the successor generally assumes its predecessor's liabilities. *Id*. If the transaction is accomplished with cash, however, the successor generally does not assume its predecessor's liabilities. *Id*. In this case, it is undisputed that the Tower defendants only purchased the assets of W Industries with cash. Thus, as the transaction involved cash as consideration, not stock, the Tower defendants did not assume W Industries' liabilities under the general rule. *Id*. There are, however, five exceptions to that general rule: (1) when there is an express or implied assumption of liability, (2) when the transaction amounts to a consolidation or merger, (3) when the successor was a mere continuation of the predecessor, (4) when the transaction was made in bad faith or without consideration and the creditors were not provided for, or (5) when the transaction is fraudulent. *Id*.

In this case, plaintiff does not argue that there was an express or implied assumption of liability. In fact, the asset-purchase agreement provided the exact opposite—it unambiguously indicated that W Industries' liabilities, including plaintiff's wrongful-termination lawsuit and corresponding consent judgment, would not be assumed by the Tower defendants, and contractual terms will only be implied if there is no express contract involving the same subject matter. *Barber v SMH (US), Inc*, 202 Mich App 366, 375; 509 NW2d 791 (1993). Thus, as plaintiff appears to recognize, this exception does not apply in this case. Instead, his argument on appeal focuses on the remaining four exceptions. Addressing each, we conclude that all four are also inapplicable to the facts of this case.

First, plaintiff has failed to demonstrate that the asset purchase amounted to a consolidation or merger. To establish a de facto merger, plaintiff must establish (1) a continuation of the predecessor's enterprise, i.e., continuity of management, personnel, physical location, assets, and general business operations, (2) a continuation of shareholders as a result of the successor paying for assets with its own stock, (3) that the predecessor ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible, and (4) that the successor assumes the predecessor's liabilities and obligations that are necessary for the continuation of the seller's ordinary business operations. *Craig v Oakwood Hosp*, 471 Mich 67, 97-98; 684 NW2d 296 (2004). Plaintiff has failed to do so. As the Tower defendants paid cash,

not stock, to acquire the assets of W Industries, there is no "continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock . . . ." *Id.* at 97. This, in and of itself, ends our analysis with respect to this exception.

As it relates to the mere-continuation exception, our Supreme Court has stated that this exception, "an exception designed to protect injured victims of defective products [that] rests upon policy reasons not applicable to a judgment creditor," has not been expanded "to cases in which the plaintiff is a judgment creditor." *Starks v Mich Welding Specialists, Inc*, 477 Mich 922; 722 NW2d 888 (2006). Thus, it is inapplicable here. Furthermore, plaintiff has failed to demonstrate a mere continuation of W Industries under that exception assuming it applies. Under the "mere continuation" doctrine, a successor corporation must accept the predecessor's liability in conjunction with the benefits of continuity when there is a continuity of enterprise between the two corporations. *Foster v Cone-Blanchard Mach Co*, 460 Mich 696, 703; 597 NW2d 506 (1999). It requires plaintiff to establish (1) a continuation of the predecessor's enterprise, i.e., continuity of management, personnel, physical location, assets, and general business operations, (2) that the predecessor ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible, and (3) that the successor assumes the seller's liabilities and obligations that are necessary for the continuation of the seller's ordinary business operations. *Id.* "[A]n additional principle relevant to [this determination is] whether the purchasing corporation holds itself out to the world as the effective continuation of the seller corporation." *Id.* at 703-704. Again, plaintiff has failed to satisfy each of these requirements. While it is true that the acquisition of W Industries' assets resulted in a degree of overlap in the retention of equipment, personnel, structures, and clients, it is also true that there was no continuity of ownership. See *Shue & Voeks, Inc v Amenity Design & Mfg, Inc*, 203 Mich App 124, 128; 511 NW2d 700 (1993). Thus, this exception is equally inapplicable.

Additionally, plaintiff has failed to demonstrate that the transfer was fraudulent and that it was made in bad faith or without consideration of W Industries' creditors. On appeal and before the trial court, plaintiff argued that the combination of the transfer between W Industries and the Tower defendants, i.e., the asset-purchase agreement, and the transfer between the Tower defendants and Walker, i.e., the non-compete agreement, constituted a fraudulent or bad-faith transfer. Plaintiff does not specifically contend that, on its own, the transfer underlying the asset-purchase agreement was fraudulent or made in bad faith. Indeed, the record belies such an assertion. The Tower defendants purchased first-priority, secured debt from JP Morgan Chase and, after W Industries defaulted, collected on the same. It is only when it is combined with the non-compete agreement that, according to plaintiff, it becomes fraudulent or a product of bad faith. That leads directly to the substance of plaintiff's argument on appeal—the non-compete agreement was fraudulent and made in bad faith (or, at the very least, there is a question of fact as to whether the non-compete agreement was fraudulent or made in bad faith). We disagree.

A transfer is fraudulent when it is made with intent to hinder, delay, or defraud creditors. See *Dillard v Schlussel*, 308 Mich App 429, 448-449; 865 NW2d 648 (2014); see also MCL 566.34(1). Plaintiff claims that the non-compete agreement represented a fraudulent transfer because, in essence, it was a payment from the Tower defendants to Walker individually for nothing in return. That is, because the asset-purchase agreement already included a non-compete provision that bound Walker, an additional non-compete agreement was merely an attempt to conceal a cash distribution to Walker. The record does not support this assertion.

Plaintiff claims that the asset-purchase agreement's non-compete provision bound Walker because Walker was an "affiliate" of W Industries. Alternatively, plaintiff claims that, regardless of whether Walker was an affiliate, Walker's agreement not to compete was an asset that was transferred in the asset-purchase agreement. No matter which argument, however, plaintiff's position is incorrect. Assuming, *without deciding*, that Walker was prohibited from competing with the Tower defendants under the asset-purchase agreement, the simultaneous non-compete agreement entered into by Walker and the Tower defendants nevertheless provided further protection for the Tower defendants. As an example, it precluded individuals not otherwise implicated by the asset-purchase agreement's non-compete provision, including individuals such as Walker's heirs, descendants, agents, representatives, executors, administrators, or assigns, from competing with the Tower defendants. While there appears to be some overlap between the non-compete provision and the non-compete agreement, it cannot be said that they convey identical rights as plaintiff suggests. Thus, because the non-compete agreement exceeded the scope of the non-compete provision in the asset-purchase agreement, it was not, as plaintiff claims, simply duplicative in nature.

Accordingly, because plaintiff has not successfully established that any of the exceptions to the general rule (that asset purchases do not include the assumption of liabilities) apply in this case, his successor-liability claim must fail as a matter of law. Thus, we conclude that the trial court properly granted summary disposition on plaintiff's successor-liability and fraudulent-transfer claims.

### D. UNLAWFUL DISTRIBUTION OF CORPORATE ASSETS

Plaintiff's unlawful-distribution claim is equally unpersuasive. He claims that, under MCL 450.1551(1)(b) (providing that directors who support a distribution to shareholders during or after dissolution without properly satisfying its outstanding debts are jointly and severally liable to creditors) and MCL 450.1855a (requiring corporations to pay or make provision for debts prior to distributing assets to shareholders), either the Tower defendants or Walker individually are liable to him based on the non-compete agreement. However, this argument relies entirely on plaintiff's assertion that the non-compete agreement was fraudulent or made in bad faith, which, as discussed above, is not supported by the record. The non-compete provision in the asset-purchase agreement is *not* the same as the non-compete agreement between the Tower defendants and Walker. Furthermore, the non-compete agreement included a payment from the Tower defendants to Walker, which could not constitute a distribution to a shareholder under the applicable statutory provisions. See, e.g., MCL 450.1106(4) (defining distribution); see also MCL 450.1345(3) (prohibiting distributions under certain circumstances). Thus, we conclude that the trial court properly granted summary disposition on plaintiff's unlawful-distribution claim.

### E. BREACH OF FIDUCIARY DUTY

Plaintiff's claim that Walker breached his fiduciary duty to plaintiff also lacks merit. He claims that, under MCL 450.1541a(1)(a) (requiring directors and officers of corporations to discharge their duties in good faith), Walker is liable to him based, again, on the non-compete agreement. This argument is abandoned on appeal because it is insufficiently briefed. *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003). Furthermore, as

stated above, plaintiff's arguments relating to the non-compete agreement are not supported by the record. The non-compete provision in the asset-purchase agreement is *not* the same as the non-compete agreement between the Tower defendants and Walker. Thus, we conclude that the trial court properly granted summary disposition on plaintiff's breach-of-fiduciary-duty claim.

## F. CIVIL CONSPIRACY

Plaintiff's civil conspiracy claim is likewise meritless in light of our conclusions above. A civil conspiracy claim cannot stand on its own. *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 384; 670 NW2d 569 (2003). Because plaintiff has failed to establish that the claims he chose to raise against the Tower defendants or Walker individually are viable as discussed above, his civil conspiracy claim must fail as a matter of law. *Id*. Thus, we conclude the trial court properly granted summary disposition on plaintiff's civil conspiracy claim.

## G. EQUITABLE RELIEF

Plaintiff lastly argues that, at the very least, this Court should provide equitable relief to plaintiff because, despite being a legitimate creditor, he has "walked away with nothing." We find this plea unpersuasive. Plaintiff's claim clearly seeks monetary damages, not equitable relief. Furthermore, simply asking this Court to grant some sort of relief is insufficient to warrant our review, and, considering the lack of merit in the claims that plaintiff chose to assert against the Tower defendants and Walker individually, we decline to further develop plaintiff's request for him.

## III. CONCLUSION

In sum, the trial court properly concluded that defendants were entitled to summary disposition on each of plaintiff's claims as a matter of law. Thus, summary disposition pursuant to MCR 2.116(I)(2) was appropriate. We therefore affirm the trial court's February 25, 2014 opinion granting summary disposition to defendants.

Affirmed. Defendants, being the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Deborah A. Servitto
/s/ Henry William Saad
/s/ Colleen A. O'Brien

-6-