*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARTHA JACKSON,

   Plaintiff-Appellant,

v

MIDWEST MEMORIAL GROUP, LLC., doing business as UNITED MEMORIAL GARDENS,

   Defendant-Appellee.

UNPUBLISHED
December 29, 2020

No. 350485
Wayne Circuit Court
LC No. 18-014923-CZ

Before: SWARTZLE, P.J., and BECKERING and GLEICHER, JJ.

PER CURIAM.

Plaintiff, Martha Jackson, is the daughter of Maxine Jackson, who died in September 2018. Defendant, Midwest Memorial Group LLC, has owned United Memorial Gardens Cemetery (UMGC), located in Wayne County, since 2008.[1] This case arose after Maxine's death, when it was discovered that someone else was buried in the burial plot intended for her. Plaintiff filed suit against defendant, alleging breach of contract, negligence, common-law and statutory conversion, and violations of the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq*., and the Prepaid Funeral and Cemetery Sales Act (PFCSA), MCL 328.211, *et seq*. Defendant moved for summary disposition under MCR 2.116(C)(7), (C)(8), and (C)(10), arguing that the rules of successor liability and plaintiff's waiver relieved it of liability under all of the theories asserted by plaintiff. Agreeing, the Wayne County circuit court entered an order granting summary disposition in favor of defendant. Because plaintiff has failed to present any evidence of defendant's

---

[1] Defendant purchased UMGC, along with other Michigan cemeteries, from a conservator appointed by the court after it was discovered that the properties' prior owner had systematically looted the cemetery trust funds of more than $60 million. The conservator entered into an Asset Purchase and Sale Agreement ("Agreement") with defendant in May 2008. This background is set forth in *Midwest Memorial Group, LLC v Citigroup Global Markets Inc*, unpublished per curiam opinion of the Court of Appeals, issued September 17, 2015 (Docket No. 322338).

wrongdoing, or that defendant has expressly or impliedly assumed liabilities arising from its predecessor's conduct, we affirm.

## I. PERTINENT FACTS AND PROCEEDINGS

On December 27, 1977, Maxine's sister, Bernice Garrison, obtained a deed to three adult burial plots in UMGC. These plots were located in the cemetery's Garden of Gethsemane, lots 89D, spaces 3 and 4, and lot 89E, space 4. On April 25, 1996, Bernice assigned space 89E-4 to Maxine. After Maxine died, plaintiff and her brother went to UMGC to make burial arrangements. However, a routine probe of the burial space 89E-4 revealed that a casket already occupied the site. Nearly three weeks after Maxine died, Bernice and her other sister, Angela Thompson, signed forms transferring Bernice's burial rights from the three adjacent plots in the Garden of Gethsemane to three adjacent plots in the Garden of Faith.[2] Maxine was buried in one of those plots.

Plaintiff filed a five-count complaint in November 2018. Each count rested in one way or another on allegations that defendant had a duty to bury Maxine in a specific plot, that it breached that duty by burying her elsewhere, and that it buried her elsewhere as a consequence of having "intentionally, recklessly, and/or negligently" caused someone else to be buried in her original plot.

In February 2019, defendant moved for summary disposition of plaintiff's complaint pursuant to MCR 2.116(C)(7) (release), (C)(8) (failure to state a claim), and (C)(10) (no genuine issue of material fact). Defendant alleged that it was entitled to summary disposition under two theories. First, defendant recounted that it had purchased UMGC in 2008 through a Purchase and Sale Agreement ("the Agreement"), and argued that, under the rules of successor liability, it was not liable for any of the theories espoused by plaintiff. Second, defendant asserted that plaintiff "waived any right she may have had to sue under the original agreement by the signed transfer of interment rights." Responding in opposition to defendant's motion, plaintiff argued in relevant part that defendant was not entitled to summary disposition because it had expressly or impliedly assumed the liabilities underlying plaintiff's complaint, that principles of equity weighed against summary disposition, and that plaintiff had waived none of her rights. Rather than rule on defendant's motion, the trial court urged the parties to explore the possibility of a settlement.

Subsequently, defendant and other parties[3] to the Agreement entered into a Third Amendment to the Agreement for the stated purpose of clarifying the parties' original intent with respect to defendant's assumption of obligations and liabilities. The Third Amendment indicated that defendant's obligations regarding consumer contracts entered into by its predecessors were limited to the following: (1) fulfilling the terms of such consumer contracts if reasonably possible;

---

[2] Bernice signed the transfer forms for plots 89D-3 and 89D-4 and Angela signed the transfer form for the plot Bernice had assigned to Maxine.

[3] The parties to the Amendment are defendant, the original Conservator, and the Michigan Commissioner for Cemeteries. The Ingham County Circuit Court entered an order approving the amendment on June 5, 2019.

(2) if not reasonably possible, fulfilling the consumer contract terms to the extent possible with a comparable good and/or service to the consumer; (3) if the consumer rejects the comparable good or service, or if one is not reasonably available, then the consumer may elect to receive a refund of the purchase price in lieu of the comparable good and/or service. In addition, the Third Amendment stated that it was never the intent of the parties to the Agreement "that Buyer [i.e., defendant] should be held liable for Seller's or Seller's predecessors' negligent or intentional acts related to any consumer contracts entered into before the Effective Date of the Purchase Agreement." The amendment was made retroactive to the effective date of the Agreement.

Thus armed, defendant filed an amended motion for summary disposition, observing that no meaningful settlement discussions had occurred and reiterating its prior arguments with respect to summary disposition, but also applying the Third Amendment to the facts of the case. As to the latter, defendant contended that it fulfilled its obligations toward Maxine and her relatives by providing comparable goods and services. Defendant opined that "[a] fair reading of the original intent" of Maxine was that she wanted to be buried in a plot next to her two sisters. That was not possible, given that someone else had been buried in one of the plots. Therefore, defendant provided comparable goods and services in the form of three adjacent plots elsewhere in the cemetery. Representatives of Maxine agreed to this solution, as evidenced by the Transfer of Location of Burial Rights forms they executed. In opposition to defendant's amended motion, plaintiff reiterated that defendant had expressly assumed the obligation and liabilities of consumer contracts and that the Third Amendment merely limited the potential damages available to her. She also argued that even if the trial court should find that defendant had not expressly assumed the relevant liabilities, her claims were independently supported by defendant's post-closing conduct.

The trial court rendered its decision based on the briefs, without oral argument. The trial court concluded that defendant was entitled to summary disposition based on the rules of successor liability and because the signed transfer of interment rights constituted waivers of any right plaintiff might have to sue under the original agreement. The court also observed that defendant had provided the representatives of Maxine with comparable goods and services, thus fulfilling its obligation under the Agreement, as amended by the Third Amendment. The court granted defendant's amended motion for summary disposition. This appeal followed.

## II. DISCUSSION

### A. STANDARD OF REVIEW

Defendant moved for summary disposition pursuant to MCR 2.116(C)(7), (C)(8), and (C)(10). The trial court did not specify under which rule(s) it granted summary disposition, but it did consider material outside the pleadings. In such cases, this Court reviews the trial court's decision as if made under MCR 2.116(C)(10). *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012).

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). The moving party has the initial burden to identify issues about which it believes there is no material factual dispute, MCR 2.116(G)(4), and to support the grounds asserted in its motion with "[a]ffidavits, depositions,

-3-

admissions, or other documentary evidence," MCR 2.116(G)(3). The court must consider the pleadings, affidavits, depositions, admissions and other documentary evidence submitted in the light most favorable to the nonmoving party. See MCR 2.116(G)(5); *Joseph*, 491 Mich at 206. It must also draw all reasonable inferences in favor of the nonmoving party. See *Dextrom v Wexford Co*, 287 Mich App 406, 415-416; 789 NW2d 211 (2010). When opposing a properly asserted and supported motion for summary disposition under MCR 2.116(C)(10), the nonmoving party cannot rely on mere allegations or denials in his or her pleadings to establish a question of fact. See *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). Rather, the nonmoving party must present evidence that establishes that there is a genuine issue of disputed fact on the issue raised by the moving party. See *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 374-375; 775 NW2d 618 (2009). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

## B. SUCCESSOR LIABILITY

Plaintiff first argues that, because defendant expressly and impliedly assumed its predecessors' liabilities, the trial court erred by concluding that successor liability did not apply. We disagree.

The corporate law concept of successor liability provides that when a successor corporation purchases the assets of its predecessor corporation for cash, the successor does not assume the predecessor's liabilities. See *Craig ex rel Craig v Oakwood Hosp*, 471 Mich 67, 96; 684 NW2d 296 (2004). There are exceptions, one of which being that the successor does assume its predecessor's liabilities "where there is an express or implied assumption of liability." *Id.* Plaintiff contends that, pursuant to § 1.4(a)(ii) of the Agreement, defendant assumed "*all* liabilities relating to valid, reasonably documented contracts with consumers . . . ." Plaintiff interprets this to mean that, through the contract with Bernice, and Bernice's assignment to Maxine, defendant's predecessor contracted to bury Maxine in the Garden of Gethsemane, plot 89E-4, and defendant expressly assumed the obligation to bury her in that specific spot.

Contrariwise, defendant contends that even before execution of the Third Amendment, it was clear from the Agreement that defendant "did not assume any liability of the type alleged in Plaintiff's complaint," i.e., liabilities arising from instances where the conduct of its predecessors made precise fulfillment of a consumer contract unreasonable. Defendant observes that § 1.1 of the Agreement states that defendant agreed "to purchase and accept from the Conservator and Seller free and clear of all liens and liabilities (other than the Assumed Liabilities), all right, title and interest in, to and under the Purchased Assets." "Assumed Liabilities" are defined in § 1.4(a) and listed on Schedule 1.4, and are comprised of financial liabilities, such as amounts defendant agreed to pay to settle pre-conservation debts for goods, services, and taxes, and a maximum liability of $191,725.59 for "Reserve Account Claims." "Reserve Account Claims" are listed on Schedule 1.4(12) and appear to be financial liabilities for goods and services pre-purchased by approximately 60 individuals. Given that the "Assumed Liabilities" on Schedule 1.4 are financial in nature, defendant impliedly interprets "all liabilities relating to valid, reasonably documented contracts with consumers" as also referring to ultimate financial liability for all valid consumer contracts, not liability for the precise fulfillment of those contracts where precise performance was

not reasonably possible through no fault of its own. According to defendant, to the extent that § 1.4(a)(ii) of the Agreement did not clearly convey the intent of the parties that defendant not be liable for precise fulfillment of consumer contracts where its predecessors' conduct rendered such fulfillment unreasonable, the parties to the Agreement enacted the Third Amendment.[4]

The Third Amendment is fatal to plaintiff's argument that defendant expressly assumed the obligation to bury Maxine in plot 89E-4 of the Garden of Gethsemane and, therefore, that the trial court erred by not imposing successor liability. Defendant took responsibility for the consumer burial contracts of its predecessors, but the Third Amendment limited defendant's liability to fulfilling such contracts where reasonably possible, providing comparable goods and services when necessary, or providing refunds where comparable goods and services were unavailable or unsatisfactory. It also made clear that defendant did not assume liabilities arising from the conduct of its predecessors. Given the foregoing, plaintiff's contention that defendant expressly assumed the liabilities relevant to her claims fails.

Plaintiff next contends that, even if defendant did not expressly assume to bury Maxine in the Garden of Gethsemane, plot 89E-4, it impliedly assumed this obligation through post-closing conduct. This argument is without merit.

"[A] successor corporation may be held responsible for the liabilities incurred by its predecessor where the facts demonstrate that there existed an implied agreement to assume liability." *Antiphon, Inc v LEP Transp, Inc*, 183 Mich App 377, 384; 454 NW2d 222 (1990). This Court has explained as follows how to find implied liability:

> Although there is no precise rule governing the finding of implied liability, there is authority that suggests such a finding may be made where the conduct or representations relied upon by the party asserting liability indicate an intention on the part of the buyer to pay the debts of the seller. Whether such an intent exists must be determined from the facts and circumstances of each case. The factors to consider are: (1) the effect of the transfer on the creditors of the predecessor corporation; and (2) admissions of liability on the part of officers or other spokespersons of the successor corporation. [*Id*.]

The sole factual basis for plaintiff's contention of implied liability is a November 21, 2017 letter (the "Letter") from defendant that plaintiff refers to as a "Confirmation of Rights." The Letter is addressed "To Whom It May Concern," and states in relevant part:

> On April 25, 1996 Maxine Jackson entered into an irrevocable contract with United Memorial Gardens Cemetery which included the purchase of an Open & Closing, and Concrete Rough Box (Vault). On March 19, 2012 Ms. Jackson entered into an

---

[4] Plaintiff does not seriously challenge the propriety, legality, or timing of the Third Amendment. Although she alleges on page three of her reply brief that the Amendment substantively changed the Agreement instead of merely clarified the parties' original intent, she has presented no evidence that would undermine the veracity of defendant's claim that the Amendment merely clarified the original intent of the parties to the Agreement.

additional irrevocable contract with United Memorial Gardens Cemetery for the purchase of a Granite Memorial for herself. Ms Jackson also owns one burial plot here at United Memorial Gardens Cemetery in the Garden of Gethsemane.

The Letter concludes by listing current prices for the goods and services Maxine had purchased. Plaintiff contends that through this Letter, defendant "acknowledged the existence of its obligations" and "demonstrate[d] its intention to assume liability." It did not.

Viewing the Letter in the light most favorable to plaintiff, and considering it along with Bernice's burial contract and subsequent assignment of 89E-4 to Maxine, the statement, "Ms Jackson also owns one burial plot here at United Memorial Gardens Cemetery in the Garden of Gethsemane," could be seen as an acknowledgement that she owns 89E-4 for burial purposes. However, plaintiff asserts that the Letter "affirmatively represented to plaintiff that the Burial Plot was still available." Nothing in the Letter supports this assertion. Likewise, nothing expressly commits defendant to burying Maxine in the plot that plaintiff assumes is referenced. At best, the Letter informs "To Whom It May Concern" of Maxine's purchases and assets at UMGC and of how much those purchases and assets would cost at the time the Letter was written.[5] Even if the Letter could be said to confirm that Maxine owned plot 89E-4 for burial purposes, nothing in the Letter commits defendant to burying her there where to do so would be unreasonable.

Lastly, plaintiff argues that even if defendant did not expressly or impliedly assume the liabilities of its predecessor, equitable principles call for the imposition of successor liability in this case because she otherwise will have no remedy. This argument also fails. "Successor liability is derived from equitable principles and is reviewed de novo on appeal." *Lakeview Commons v Empower Yourself*, 290 Mich App 503, 506; 802 NW2d 712, 715 (2010).

> The traditional rule of successor liability examines the nature of the transaction between predecessor and successor corporations. If the acquisition is accomplished by merger, with shares of stock serving as consideration, the successor generally assumes all its predecessor's liabilities. However, where the purchase is accomplished by an exchange of cash for assets, the successor is not liable for its predecessor's liabilities unless one of five narrow exceptions applies. [*Id*. at 507.]

---

[5] Plaintiff also argues in her main brief to this Court that defendant "ratified the Contract when it confirmed its existence and affirmatively represented to Plaintiff that the Burial Plot was still available." However, as indicated above, nothing in the Letter affirmatively represents that plot 89E-4 was available or acknowledges any obligation to bury Maxine in that space. Plaintiff also claims that at the time of the Letter, defendant "had full knowledge of the material facts relating to the Contract and had access to records indicating that another person had been interred in the Burial Plot." The record suggests that defendant knew about Bernice's contract and Deed of Interment Rights and that she had assigned her right to 89E-4 to Maxine. However, as will be addressed below, the record contradicts plaintiff's assertion that defendant knew someone else was buried in Maxine's original plot.

Defendant purchased UMGC and other assets for cash.  Defendant expressly assumed only certain liabilities and rejected liabilities arising from the conduct of its predecessors.  In some instances, "continuity of enterprise between a successor and its predecessor may force a successor to accept the liability with the benefits of such continuity."  *Id* (quotation marks and citation omitted).  Plaintiff has not pled or proven continuity of enterprise and, as already discussed, the facts of this case do not support the imposition of successor liability.  In addition, defendant provided Maxine with a burial plot that fulfilled her intent to be buried adjacent to her sisters, a burial plot to which plaintiff has made no objection, other than it is not 89E-4, and relative to which she has the same rights and privileges that she would have had had Maxine been buried in her original plot.  Under these circumstances, it cannot be said that equitable principles call for the imposition of successor liability.

It is undisputed that Bernice purchased and then assigned plot 89E-4 to Maxine before defendant became the owner of UMGC.  However, according to the Agreement, as amended by the Third Amendment, the only obligation defendant assumed with regard to its predecessors' consumer burial contracts was to execute the contracts if reasonably possible and, if not reasonably possible, to provide comparable goods and services or a refund.  Here, defendant provided comparable services by burying Maxine in a space in the Garden of Faith, next to plots designated for her sisters.  To the extent that there was a breach of contract caused by burying Maxine in a space other than 89E-4 in the Garden of Gethsemane, defendant is not liable by operation of the general rule of successor liability and the fact that it fulfilled its obligation to Maxine and her representatives as outlined by the Agreement, as amended.  In the absence of any genuine issue of material fact, and defendant being entitled to summary disposition by application of the general rule of successor liability, the trial court did not err by granting defendant's motion for summary disposition.

## C.  POST-CLOSING CONDUCT

Plaintiff next contends that even if successor liability does not apply, defendant's post-closing conduct supports her claims.  Specifically, plaintiff contends that the Letter, quoted above, supports her claim for negligence, constitutes post-closing ratification of the agreement to bury Maxine in 89E-4 in the Garden of Gethsemane, and violates several subsections of MCL 445.903(1) of the Michigan Consumer Protection Act (MCPA), and of MCL 328.211 of the Prepaid Funeral and Cemetery Sales Act (PFCSA).  Again, we disagree.

"To establish a prima facie case of negligence, plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages."  *Finazzo v Fire Equip Co*, 323 Mich App 620, 635; 918 NW2d 200 (2018).  "Under the common law, conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein."  *Aroma Wines & Equip, Inc v Columbian Distribution Services, Inc*, 497 Mich 337, 346; 871 NW2d 136 (2015).  Statutory conversion also involves "converting property to the other person's own use."  MCL 600.2919a(1)(a).

To establish that it did not breach any duties owed to plaintiff, defendant attached to its reply to plaintiff's brief in opposition to summary disposition a letter it had written to a State of Michigan regulation officer in response to two complaints plaintiff filed with the Department of

-7-

Licensing and Regulatory Affairs. The letter explained that defendant's practice is to have its grounds crew probe a grave site when a family comes to arrange a burial and that when its grounds crew probed the space reserved for Maxine, it discovered a casket in the space. It recounted the arrangements made to transfer the three sisters' burial plots to a different location and to bury Maxine in one of those plots. Finally, the letter offered an explanation, based on review of UMGC's records, suggesting how defendant's predecessors were responsible for the error. This letter, the content or substance of which would be admissible at trial under MCR 2.116(G)(6), refutes plaintiff's allegations of defendant's negligence and conversion by indicating that defendant's predecessors were responsible for burying someone else in Maxine's original space.

To survive summary disposition of her negligence and conversion claims, plaintiff had to present evidence establishing a genuine issue of material fact that defendant had negligently buried someone in Maxine's original plot or seized the plot for its own use. See *Barnard Mfg Co, Inc*, 285 Mich App at 374-375. Plaintiff did not meet this burden. She presented no evidence that would raise fact questions regarding the responsibility of defendant's predecessors for burying someone else in 89E-4 or whether defendant's practice of probing a grave site at the time arrangements for burial are being made falls outside a cemetery's duty of ordinary care. Because plaintiff failed to present evidence that created a genuine issue of material fact regarding whether defendant acted negligently or converted plot 89(E)-4 to its own use, and defendant was entitled to summary disposition as a matter of law, the trial court did not err in granting defendant summary disposition on plaintiff's claims of negligence and conversion.

Plaintiff next alleges that summary disposition of its claim under the MCPA was inappropriate because when defendant sent the Letter, it committed numerous unfair, unconscionable, or deceptive acts in violation of the MCPA. Assuming for the sake of argument that the MCPA is applicable,[6] plaintiff's contention fails.

Plaintiff bases this claim of error on her contention that the Letter affirmed Maxine's contract with defendant and "affirmatively represented to Plaintiff that the Burial Plot was available." As previously discussed, contrary to plaintiff's contentions, the Letter does not affirmatively represent that Maxine owns and will be buried in lot 89E-4, nor is there any evidence that defendant knew the plot was unavailable but represented otherwise in the Letter. Because the Letter does not support plaintiff's allegations that defendant's business practices were unfair,

---

[6] Defendant claims that the MCPA does not apply because the transaction at issue is governed by the PFCSA, and § 4(1) of the MCPA "exempts any 'transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States.' " *Liss v Lewiston-Richards, Inc*, 478 Mich 203, 208; 732 NW2d 514 (2007). Bernice's original purchase occurred in the 1970s, before the Legislature enacted the "prepaid funeral contract funding act," of 1986 PA 255, effective July 1, 1987, and would have been subject to "agreements for disposition of dead human bodies," MCL 328.201 through MCL 328.204. Bernice's assignment of 89E-4 to Maxine occurred in 1996, but the PFCSA does not appear to address assignments of this type. So, it is not entirely clear that the PFCSA applies to the transactions at issue here. 2004 PA 21, effective January 1, 2005, among other things, changed the name of the act to the prepaid funeral and cemetery sales act.

unconscionable, or deceptive in violation of various provisions of the MCPA, defendant was entitled to summary disposition of plaintiff's claim under the MCPA.

Finally, plaintiff also alleged in her complaint that defendant violated MCL 328.218(1) of the PFCSA by failing "to keep accurate accounts, books, and records of its transaction with Plaintiff's decedent." Assuming for the sake of argument that the PFCSA applies to the transactions at issue here (see footnote 6), plaintiff's allegations that defendant's recordkeeping violate MCL 328.218(1) of the PFCSA are without merit.

As with her allegations under the MCPA, plaintiff bases her allegations under the PFCSA on the assumption that the Letter affirmed the availability of plot 89E-4 and defendant's commitment to burying Maxine in that space. As previously indicated, the Letter neither mentioned the plot nor affirmed its availability. Thus, there is no factual predicate for plaintiff's allegation. In addition, to the extent that plaintiff is insinuating that defendant should have kept better track of who was buried where, she has presented no evidence that it was defendant who failed to record that a body had been buried in Maxine's original plot. On the contrary, defendant presented evidence suggesting that its predecessor was at fault. To the extent that defendant's predecessors may have failed to keep accurate cemetery logbooks, defendant is not liable for that oversight, per the terms of the Agreement and the general rule of successor liability. Thus, plaintiff is not entitled to relief based on the alleged violation of the PFCSA.

In sum, plaintiff fails to support her claims against defendant for negligence and conversion (statutory or common-law) with evidence that defendant caused a body to be buried in Maxine's original plot. Defendant's letter of November 21, 2017, does not support plaintiff's allegations that defendant violated various provisions of the MCPA because, contrary to plaintiff's assertion, it does not signal the availability of, and defendant's acceptance of the obligation to bury Maxine in, plot 89E-4 of UMGC's Garden of Gethsemane. Finally, plaintiff's claim that defendant violated MCL 328.218(1) by failing to keep accurate cemetery logbooks fails because plaintiff has presented no evidence to suggest that any errors in recordkeeping are attributable to defendant. In fact, evidence suggests that defendant's predecessors were responsible for the error, and under the terms of the Agreement and the general rule of successor liability, defendant is not responsible for liabilities arising from its predecessors' actions. Accordingly, the trial court did not err in granting defendant's motion for summary disposition of plaintiff's claims. In light of our disposition of these issues, we need not address plaintiff's remaining argument regarding waiver.

Affirmed.

/s/ Brock A. Swartzle
/s/ Jane M. Beckering
/s/ Elizabeth L. Gleicher

-9-