PEARCE v. SCHNEIDER.

1. CORPORATIONS—LAW IMPLIES STIPULATION ON PART OF NEW COR-
PORATION TAKING ASSETS OF OLD ONE TO PAY ITS DEBTS.
   Where a corporation was organized to take over the assets
   of another corporation, pay its debts, and provide funds
   to carry on the business, and assets of the old corpora-
   tion exceeding its liabilities were turned over to the new
   one, the law implies a stipulation on its part to pay the
   debts of the old concern.

2. SAME—RIGHTS OF CREDITORS OF CORPORATION WHOSE ASSETS ARE
TAKEN BY NEW CONCERN.
   The rights of creditors of a corporation whose assets were
   taken over by a new corporation could not be destroyed
   or impaired by an agreement between the incorporators
   of the new company or by and between it and the securi-
   ties commission, in the absence of a waiver of their rights
   by the creditors.

3. SAME—RECEIVERS—ACCOUNTING.
   Where the incorporators of a company organized to take
   over the assets of another corporation agreed with the
   securities commission to issue stock to a certain amount
   to one of the incorporators as trustee for the specific
   purpose of satisfying certain of the obligations of the old
   company, but this was not done, and, instead, the pro-
   ceeds from the sale of said stock were mingled with the
   company's common funds, and certain of said creditors
   were paid therefrom, the receiver of the new company
   may not maintain a suit against said incorporator and the
   creditors so paid for an accounting because, in paying said
   creditors, an obligation imposed by law was satisfied, and
   it is unimportant whether the total amount so paid was
   more or less than the amount of said stock so agreed
   to be set aside.

Appeal from Calhoun; North (Walter H.), J.   Sub-
mitted January 5, 1928.   (Docket No. 76.)   Decided
February 14, 1928.   Rehearing denied April 2, 1928.

[1]Corporations, 14a C. J. § 3620; 15 A. L. R. 1112; 30 A. L. R.
558; 39 A. L. R. 148; 7 R. C. L. 183; 2 R. C. L. Supp. 206; 4
R. C. L. Supp. 472; 5 R. C. L. Supp. 394; 6 R. C. L. Supp. 433;
[2]Id., 14a C. J. § 3620; [3]Id., 14a C. J. § 3620.

Bill by Frank H. Pearce, receiver of the People's Coal Mining Company, against George W. Schneider and others for an accounting.    From a decree dismissing the bill, plaintiff appeals.    Affirmed.

*N. A. Cobb* and *Maxwell B. Allen,* for plaintiff.

*James Mackey* and *Burritt Hamilton,* for defendants.

CLARK, J.    The bill for accounting, filed by plaintiff as receiver for the People's Coal Mining Company, a Michigan corporation, was dismissed, and he has appealed.

The corporation was organized to take over the assets, including a coal mine, of the Albion Coal Company, a Michigan corporation, to pay its debts and to provide funds to conduct its business of mining and selling coal.    We quote from its articles:

"The purpose of this corporation is to take over the assets of the Albion Coal Company and to provide sufficient working capital to properly work this property. Some of the stock issued to George W. Schneider is issued to him as trustee for the purpose of taking care of all the liabilities of the Albion Coal Company."

The three stockholders of the former company, Fritz, Love, and Schneider, organized the later company. The assets for the purposes of incorporation were valued at $200,000.    The liabilities of the Albion Company to its creditors were nearly $147,000.    The total value of the assets of the old company, turned over to the new concern, exceeded the total of its debts.    This cannot well be questioned on the record. The plan as to creditors, tentative at least, made by the incorporators, was to pay some of them, to issue stock in the new company to others, and to escrow certain claims to await developments.    To meet this plan it was thought that stock of the new company of the par value of $79,000 would be required.    The

new company, People's Coal Mining Company, was organized with a capital stock of $350,000. To meet the situation above stated, the plan devised by the incorporators and approved by the Michigan securities commission was, quoting from the opinion of the trial judge:

"Two hundred thousand ($200,000) dollars of the stock of the People's Coal Mining Company was set aside to pay for the assets of the Albion Coal Company, which were transferred to the new corporation, and which at that time constituted its sole assets. Of this two hundred thousand ($200,000) dollars capital stock one hundred and twenty-one thousand ($121,000) dollars was escrowed with the State treasurer for the evident purpose of being used later to pay for the assets of the Albion Coal Company, or to satisfy its creditors, or if the commission so directed to be used for the benefit of the People's Coal Mining Company. Seventy-nine thousand ($79,000) dollars was supposed to be issued to George W. Schneider as a trustee for the specific purpose of paying or satisfying certain obligations of the Albion Coal Company. The proof shows that there was a list of these obligations prepared at the time, but unfortunately it did not seem possible to produce the same and make it a part of the record in this case. The remaining one hundred and fifty thousand ($150,000) dollars of the capital stock of the People's Coal Mining Company was to be placed on the market and the proceeds of the sale thereof used for the benefit of the People's Coal Mining Company."

Certificates for shares to the amount of $79,000 were not issued to Mr. Schneider. A certificate to the amount of $121,000 was placed with the State treasurer, and other stock without distinction as to class ($79,000 and $150,000) was sold and proceeds went into the treasury of the company. Debts of the Albion Coal Company were paid out of the treasury from time to time and treasury funds were of course used for the corporate functions proper of People's Coal Mining Company. As stated by the

trial court, this commingling of the proceeds from sales of stock of both classes and the indiscriminate use of the proceeds for both of said purposes is largely responsible for this litigation, and this situation presents the principal question in the case.

A necessary legal consequence of what was here done was an obligation on the part of the new company to pay creditors of the old. The later corporation was but a reincarnation of the old. The stockholders were the same. The main corporate purpose was to conduct the same business. All the assets of the former corporation were turned over as a basis for the issue of stock. The important changes were to increase capital stock to be sold to provide funds for the enterprise and to change the name. Under the statute the name might have been changed and the amount of capital stock and the number of shares increased by amendment of the articles. Comp. Laws Supp. 1922, § 9053 (48, 61). The law in the circumstances above set forth implies a stipulation on the part of the new company to pay the debts of the old concern. It is a settled rule of law:

"The courts will not tolerate any species of transaction whereby the stockholders in the debtor corporation are permitted, by virtue of their stock ownership, to retain for themselves an interest in the corporate assets until the debts of the corporation shall have been paid." 15 A. L. R. 1113.

See 15 A. L. R. 1112, note, where the cases are reviewed fully.

It was held in *Grenell* v. *Detroit Gas Co.*, 112 Mich. 70, quoting from syllabus:

"A corporation which acquires the entire property of another corporation under an arrangement which has the effect of distributing the assets of the latter among its stockholders, to the exclusion of creditors, takes the property subject to the payment of the debts of its vendor." * * *

See, also, *Wabash Railway Co.* v. *Marshall*, 224 Mich. 593, and cases cited.

It does not appear that creditors whose claims have been satisfied had waived right to demand payment. The rights of such creditors could not be destroyed or impaired by an agreement between the incorporators of the company or by and between it and the securities commission. The incorporators and the commission merely sought to provide for payment. When Mr. Schneider, acting for the new company, paid or satisfied demands of creditors of the old concern, he discharged, to the extent of the amount paid, an obligation imposed by law and therefore in this suit by receiver it is not important, so long as the funds were used to pay amounts due such creditors, whether the total amount so paid was more or less than the said $79,000.

The evidence as to the account of payments relates to a great number of items and to many entries in books and to memoranda. It will profit no one to set forth such evidence or to set up the account, and to print it would be waste. No useful purpose will be served by a review of evidence relative to other defendants, who it is alleged were beneficiaries of some of the payments made by defendant Schneider of funds of the corporation. A study of the record does not persuade us that the decision of the trial judge should be disturbed. He filed a long and carefully prepared opinion which covered the case. We are in accord with his conclusions.

Decree affirmed, with costs to defendants.

Fellows, Wiest, McDonald, and Sharpe, JJ., concurred. North, J., did not sit.

Chief Justice Flannigan and the late Justice Bird took no part in this decision.