SHUE & VOEKS, INC v AMENITY DESIGN & MANUFACTURING, INC

Docket No. 140796. Submitted December 10, 1993, at Lansing. Decided December 20, 1993, at 10:05 A.M.

> Shue & Voeks, Inc., brought an action in the Genesee Circuit Court against Amenity Design & Manufacturing, Inc. (Amenity), and Helmac Amenity Design & Manufacturing, Ltd. (Helmac), seeking damages for an alleged breach of a lease. Helmac was formed in 1986 and was financed by a loan from Citizens Commercial and Savings Bank. Nicholas McKay, one hundred percent shareholder of the parent corporation, Helmac Products Corporation, executed a personal guaranty of the loan. In 1988, Helmac entered into a five-year lease with the plaintiff for a warehouse building. In 1989, William McKay, the president of Helmac, relinquished his position and formed Amenity for the purpose of acquiring Helmac's assets. Amenity assumed the outstanding $2.3 million obligation owed by Helmac to Citizens Bank, notified Helmac's creditors of the transfer of Helmac's assets to Amenity and its intention not to assume debts not specifically listed, and continued operations in the plaintiff's building. Nicholas McKay personally guaranteed payment of the debt assumed by Amenity. After unsuccessful attempts to negotiate a new lease, the plaintiff moved to evict Amenity from its building and brought this action to recover its damages. Amenity responded by alleging that it did not assume Helmac's obligations under the lease. The court, Philip C. Elliott, J., found Amenity liable as a successor corporation and for violation of the Uniform Fraudulent Conveyance Act, MCL 566.11 et seq.; MSA 26.881 et seq., and issued an order of judgment against Helmac and Amenity, jointly and severally. Amenity appealed.

The Court of Appeals held:

---

REFERENCES

Am Jur 2d, Corporations §§ 2704 et seq.; Fraudulent Conveyances §§ 238 et seq.

Rights and remedies of creditor of bulk sales transferor not listed in accordance with UCC sec. 6-104(1)(a), (2) and (3). 18 ALR4th 1090.

The portion of the judgment finding Amenity jointly and severally liable with Helmac must be vacated.

1. The evidence does not support the trial court's finding that Amenity, the new corporation, was a mere continuance of the old corporation, Helmac. The court clearly erred in finding that a de facto merger occurred and in holding Amenity liable under Helmac's lease pursuant to a theory of successor liability.

2. The plaintiff failed to prove a violation of the Uniform Fraudulent Conveyance Act, and the trial court erred in finding a violation of the act absent evidence that Helmac's sale of its assets to Amenity was accomplished with the intent to defraud its creditors or was without adequate consideration.

3. Although Amenity's alleged strict compliance with the bulk sales provisions of the Uniform Commercial Code, MCL 440.6102 *et seq.*; MSA 19.6102 *et seq.*, is a relevant factor tending to negate a finding that it intended to defraud, compliance with the bulk sales act does not insulate from liability a conveyance that violates the Uniform Fraudulent Conveyance Act. Amenity's alleged strict compliance with the bulk sales provisions of the UCC is not dispositive of this case.

Reversed.

1. CORPORATIONS — SALE OF ASSETS — SUCCESSOR LIABILITY — DEBTS AND LIABILITIES.

Although a corporation that purchases the assets of another corporation generally is not responsible for the debts and liabilities of the seller, the obligations of the seller will be considered to have been assumed where the two corporations consolidate and form a new corporation making no provision for the payment of the old corporation's debts, where the purchasing corporation expressly or impliedly agrees to assume the obligations, where the new corporation is a mere continuance of the old, or where the sale is fraudulent.

2. CORPORATIONS — BULK SALES — UNIFORM COMMERCIAL CODE — UNIFORM FRAUDULENT CONVEYANCE ACT.

One corporation's conveyance of its assets to another accomplished in strict compliance with the bulk sales provisions of the Uniform Commercial Code is a relevant factor tending to negate a finding of intent to defraud but does not prevent a finding of liability under the Uniform Fraudulent Conveyance Act where a violation of the act is shown (MCL 440.6102 *et seq.*, 566.11 *et seq.*; MSA 19.6102 *et seq.*, 26.881 *et seq.*).

*Smith, Harris & Goyette* (by *Paul J. Goyette*), for the plaintiff.

*Schafer & Weiner, P.C.* (by *Daniel J. Weiner* and *Elaine M. Roseborough*), for Amenity Design & Manufacturing, Inc.

Before: McDONALD, P.J., and GRIBBS and D. A. JOHNSTON, III,* JJ.

PER CURIAM. Defendant-appellant Amenity Design & Manufacturing, Inc., appeals as of right from an April 29, 1991, order of judgment issued in this action alleging breach of contract. We reverse.

This action concerns the impact of a bulk sale transaction on a lease obligation held by defendant Helmac Amenity Design & Manufacturing, Ltd. (Helmac), the transferor corporation. Helmac was formed in 1986 as a subsidiary of Helmac Products Corporation (the parent corporation). Helmac manufactured, packaged, and distributed hotel amenities. Helmac was financed by a loan from Citizens Commercial and Savings Bank. Nicholas McKay, one hundred percent shareholder of the parent corporation, executed a personal guaranty of the loan. In December 1988, Helmac[1] entered into a five-year lease with plaintiff for a large warehouse building. The alleged breach of the lease is the basis of this lawsuit.

In July 1989, Helmac was experiencing cash-flow problems and Citizens Bank declined to make further advancements under the existing line of credit. The parent corporation decided to sell or liquidate Helmac. After failed attempts to find a purchaser of the business, William McKay, the president of Helmac, relinquished his position and formed Amenity for the purpose of acquiring Hel-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Although in December 1988 Helmac changed its name to California Sun Products, Inc., for purposes of clarity we will continue to refer to the corporation as Helmac throughout the opinion.

mac's assets. Amenity assumed the outstanding $2.3 million obligation owed by Helmac to Citizens Bank, notified Helmac's creditors of the transfer of Helmac's assets to Amenity and its intention not to assume debts not specifically listed, and continued operations in plaintiff's facilities. Nicholas McKay personally guaranteed payment of the $2.3 million debt assumed by Amenity.

After unsuccessful attempts to negotiate a new lease, plaintiff moved to evict Amenity from its facility. Plaintiff filed this action to recover the expenses incurred to relet the facility and for damages resulting from the breach of the lease. The trial court issued an order of judgment against Helmac and Amenity, jointly and severally.[2] It is from this order Amenity now appeals.

Plaintiff presented at trial three theories of recovery with regard to Amenity: that Amenity was an assignee of the lease;[3] that Helmac conveyed its assets to Amenity in violation of various provisions of the Uniform Fraudulent Conveyance Act (UFCA), MCL 566.11 *et seq.*; MSA 26.881 *et seq.*, specifically MCL 566.14; MSA 26.884 through MCL 566.17; MSA 26.887, MCL 566.21; MSA 26.891, MCL 566.101; MSA 26.901, and MCL 566.221; MSA 26.971; and that Amenity should be held liable as a successor corporation. From a review of the transcript and the court's written opinion, both of which lack sufficient findings of fact with regard to Amenity's liability, it appears the trial court found Amenity liable as a successor corporation and for violation of the UFCA. We find the court's conclusions to be unsupported by both the law and the facts.

Generally, where one corporation sells its assets

---

[2] Defendant Helmac is not a party to this appeal.

[3] The trial court found there was no assignment of the lease and plaintiff does not object to this finding on appeal.

to another, the purchaser is not responsible for the debts and liabilities of the seller. *Stevens v McLouth Steel Products Corp,* 433 Mich 365; 446 NW2d 95 (1989). However, the obligations will be considered assumed under certain circumstances. Those circumstances include situations where two or more corporations consolidate and form a new corporation making no provision for the payment of the old corporation's debts, where the purchasing corporation either expressly or impliedly agrees to assume the obligations, where the new corporation is a mere continuance of the old, or where the sale is fraudulent. *Antiphon, Inc v LEP Transport, Inc,* 183 Mich App 377, 382-383; 454 NW2d 222 (1990). Plaintiff's theory of successor liability falls within the exception imposing liability when the new corporation is a mere continuance of the old. However, in this case the evidence presented does not support such a finding. There was no continuity of ownership, although Amenity retained some of Helmac's employees, the number of full-time employees was reduced from approximately thirty to four, and the focus of the business changed from primarily manufacturing to primarily sales and marketing. The trial court clearly erred in finding a "defacto merger" occurred and holding Amenity liable under Helmac's lease on this theory.

We also find plaintiff failed to prove a violation of the UFCA. The trial court failed to identify the specific sections of the UFCA upon which it based its ruling. However, a review of the sections of the act relied upon by plaintiff indicates plaintiff was required to affirmatively prove the conveyance was made with the specific intent to defraud, MCL 566.17; MSA 26.887, MCL 566.101; MSA 26.901, and MCL 566.221; MSA 26.971, or that the convey-

ance was made without adequate consideration, MCL 566.14; MSA 26.884, MCL 566.15; MSA 26.885, and MCL 566.16; MSA 26.886. Plaintiff presented insufficient evidence to prove either point. In fact, it appears plaintiff concedes on appeal its failure to prove an intent to defraud and, instead, focuses its argument on those sections of the act that require a showing of no adequate consideration but presume intent to defraud. However, the trial court made no finding of lack of consideration, and any such finding would not have been supported by the record. The uncontroverted testimony at trial indicated Helmac's assets to be worth between $1.76 million and $2.3 million. Amenity's assumption of the $2.3 million debt owed to Citizens Bank by Helmac was clearly fair consideration. The trial court erred in finding a violation of the UFCA absent evidence that Helmac's sale of the assets to Amenity was accomplished with the intent to defraud its creditors.

Amenity argues on appeal that no liability may attach because the conveyance was accomplished in strict compliance with the bulk sales provisions of the Uniform Commercial Code, MCL 440.6102 *et seq.*; MSA 19.6102 *et seq.* We reject Amenity's contention that its compliance with the bulk sales provisions of the act is dispositive of the case. Although the compliance is clearly a relevant factor tending to negate a finding that it intended to defraud, compliance with the bulk sales act does not insulate a conveyance should the conveyance violate the UFCA.

For the reasons stated above, that portion of the judgment finding Amenity jointly and severally liable with Helmac is vacated.

Reversed.