# STATE OF MICHIGAN

# COURT OF APPEALS

COMMONWEALTH LAND TITLE
INSURANCE COMPANY,

Plaintiff-Appellee,

v

METRO TITLE CORPORATION and METRO
TITLE AGENCY,

Defendants,

and

METRO EQUITY SERVICES,

Defendant-Appellant.

FOR PUBLICATION
May 3, 2016
9:00 a.m.

No. 324914
Oakland Circuit Court
LC No. 2012-129057-CK

Before: O'CONNELL, P.J., and MARKEY and O'BRIEN, JJ.

O'CONNELL, P.J.

Defendant Metro Equity Services appeals as of right the trial court's November 17, 2014 order enforcing a judgment obtained by plaintiff, Commonwealth Land Title Insurance Company, under a successor-liability theory. Because Michigan recognizes a separate and distinct exception to successor non-liability for causes of action for successor non-liability in cases other than products liability, we affirm.

## I. FACTUAL BACKGROUND

This case arises out of a default judgment that was entered in favor of plaintiff against defendant Metro Title Corporation/Metro Title Agency (Metro Title)[1] in a separate case in May 2012. Approximately three months after the trial court entered a default judgment, plaintiff filed this lawsuit against Metro Title and Metro Equity Services, asserting that (1) Metro Title formed Metro Equity for the purpose of fraudulently transferring their assets to avoid collection on the

---

[1] Metro Title Agency is a registered assumed name for Metro Title Corporation.

May 2012 default judgment, and (2) Metro Equity was liable for the judgment as a mere continuation of Metro Title under a successor-liability theory.

Metro Equity moved for summary disposition under MCR 2.116(C)(8) and (10). While it acknowledged that its owner was the owner of Metro Title and Metro Equity, it argued that Metro Equity was not a mere continuation of Metro Title because Metro Equity did not engage in the same business or customer base as Metro Title and Metro Equity did not purchase any of Metro Title's stock or liabilities.

The trial court denied Metro Equity's motion, concluding that questions of fact remained as to Metro Equity's liability as a successor corporation. The trial court held a bench trial and, at the close of plaintiff's proofs, it granted Metro Equity a directed verdict motion on plaintiff's fraudulent transfer claim, but it found that Metro Equity constituted a mere continuation of Metro Title under plaintiff's successor-liability theory. Thus, the trial court entered an order enforcing the May 2012 judgment against Metro Equity. Metro Equity now appeals.

## II. STANDARD OF REVIEW

This Court reviews de novo the trial court's conclusions of law made during a bench trial. *Bertrand v City of Mackinac Island*, 256 Mich App 13, 28; 662 NW2d 77 (2003). We review for an abuse of discretion a trial court's decision regarding the scope and meaning of pleadings. *Dacon v Transue*, 441 Mich 315, 328; 490 NW2d 369 (1992).

## III. ANALYSIS

Metro Equity asserts that the "mere continuation" exception to successor non-liability is no longer a viable theory of successor liability and that all plaintiffs must proceed under a "continuity of the enterprise" theory, which may not be applied to judgment creditors. We disagree.

Michigan law recognizes two separate exceptions to a successor corporation's non-liability. The "continuity of enterprise" exception only applies to products liability cases and cases with similar public-policy concerns, but "the mere continuation" exception applies to other causes of action involving successor non-liability. Judge RIORDAN has elegantly summarized these two exceptions and the difference between them:

### I. "MERE CONTINUATION"

Michigan follows the traditional rule of successor liability. *Foster* [*v Cone-Blanchard Machine Co*], 460 Mich [696] at 702[; 597 NW2d 506 (1999)]. Under that rule, the nature of the transaction determines the potential liability of predecessor and successor corporations. *Id.* "If the acquisition is accomplished by merger, with shares of stock serving as consideration, the successor generally assumes all its predecessor's liabilities. However, where the purchase is accomplished by an exchange of cash for assets, the successor is not liable for its predecessor's liabilities unless one of five narrow exceptions applies." *Id.* The five exceptions are: (1) an express or implied assumption of liability; (2) de facto

-2-

consolidation or merger; (3) fraud; (4) transfer lacking in good faith or consideration; or (5) where the transferee corporation was a mere continuation or reincarnation of the old corporation. *Id.* at 702.

\* \* \*

## II. "CONTINUITY OF THE ENTERPRISE"

However, another relevant doctrine is the continuity of the enterprise doctrine. In *Turner* [*v Bituminous Cas Co*], 397 Mich [406] at 883[; 244 NW2d 873 (1976)], the Michigan Supreme Court applied the successor liability doctrine in the context of products liability cases, establishing the continuity of the enterprise doctrine. Pursuant to this doctrine, successor liability is imposed if: (1) there is continuation of the seller corporation (i.e. continuity of management, personnel, physical location, assets, and general business operations of the predecessor corporation); (2) the predecessor corporation ceases its ordinary business operations, liquidates, and dissolves; and (3) the purchasing corporation assumes liabilities and obligations of the seller ordinarily necessary for the continuation of normal business operations. See *Foster*, 460 Mich at 703 (describing the *Turner* doctrine). Also pertinent is whether the purchasing corporation held itself out to the world as the effective continuation of the seller corporation. *Turner*, 397 Mich at 430.

\* \* \*

. . . [T]he continuity of the enterprise doctrine generally is limited to products liability cases. See *CT Charlton & Assoc, Inc*, 541 Fed Appx at 552 ("No matter how the 'continuity of the enterprise' doctrine is characterized, a review of Michigan law and the policies underlying the doctrine makes clear that it is only meant to apply in products-liability cases (and potentially a few other areas animated by similar public-policy concerns)."). See also *Turner*, 397 Mich at 416 ("This is a products liability case first and foremost."). In fact, *Starks* could be interpreted as limiting the continuity of the enterprise doctrine to the products liability context. 477 Mich at 922 ("Because an exception designed to protect injured victims of defective products rests upon policy reasons not applicable to a judgment creditor, the Court declines to expand the exception to the traditional rule set forth in [*Turner*] to cases in which the plaintiff is a judgment creditor."). See also *City Mgt Corp v US Chem Co, Inc*, 43 F3d 244, 253 (CA 6,1994) ("[T]he Michigan Supreme Court intended that the continuing enterprise exception be limited to products liability cases.").

However, no such limitation appears in the context of the mere continuation doctrine. As the bankruptcy court in the eastern district of Michigan opined, "the traditional exceptions under Michigan law for the general rule of corporate successor nonliability, one of which is the 'mere continuation' exception, *do* apply in the commercial context, and are *not limited* to product liability cases." *In re Clements Mfg Liquidation Co, LLC*, 521 BR at 253

(emphasis added).  Stated differently, the mere continuation exception applies to commercial cases and is not limited to product liability cases.  The *Clements* court further opined that "[t]he Michigan Supreme Court's one paragraph opinion in the *Starks* case . . . does not hold otherwise.  Rather, . . . *Starks* is limited . . . to product liability cases, a different exception to the traditional rule of non-liability of corporate successors, namely, the 'continuity of the enterprise' doctrine, which is a separate basis for imposing successor liability from the 'mere continuation' doctrine."  *Id.* at 253-254.  [*Taizhou Golden Sun Arts v COLORBÖK, LLC*, unpublished opinion per curiam of the Court of Appeals, issued August 15, 2015 (Docket No. 320129), pp 1-3, (RIORDAN, J., *concurring*).][2]

A deeper analysis of precedent reveals that Judge RIORDAN's summary well-reflects the current state of the law in this area.  In *Chase v Mich Tel Co*, our Supreme Court considered whether a successor corporation could be liable for injuries sustained by an employee of the predecessor corporation, and stated that

> [t]he law is well settled in regard to liability of the consolidated or purchasing corporation for the debts and liabilities of the consolidating or selling corporation.  Such obligations are assumed (1) when two or more corporations consolidate and form a new corporation, making no provision for the payment of the obligations of the old; (2) when by agreement, express or implied, a purchasing corporation promises to pay the debts of the selling corporation; (3) *when the new corporation is a mere continuance of the old*; (4) when the sale is fraudulent, and the property of the old corporation, liable for its debts, can be followed into the hands of the purchaser.  [*Chase v Mich Tel Co*, 121 Mich 631, 634; 80 NW 717 (1899) (emphasis added).]

The *Chase* court provided that these were each separate exceptions.  See *Id*. ("Plaintiff produced no evidence tending to bring the defendant within any of these cases.")  In *Turner v Bituminous Cas Co*, our Supreme Court summarized the elements of a de-facto merger, *id*, at 420, and then modified them to account for the fact that a sale of product will rarely involve shareholders, *id*. at 430.  Accordingly, the *Turner* court created a "continuity of enterprise" exception to apply in products liability cases involving the cash sale of corporate assets, which depended on whether (1) the enterprise continued such as through retaining assets and personnel, (2) the selling corporation ceased operations, (3) the purchasing corporation assumed liabilities and obligations to the extent necessary to continue operations, and (4) the purchasing corporation held itself out to the world as a continuation.  *Id*. at 430-431.  *Turner* did not specifically rely on *Chase* and did not purport to limit the scope of *Chase*'s "mere continuation" general exception.

Our Court has applied the traditional mere continuation successor exception outside the context of products liability cases.  See *RDM Holdings, Ltd v Continental Plastics Co*, 281 Mich

---

[2] Also see Petrik, *The Current State of Successor Liability in Michigan and Why the Michigan Supreme Court's Clarification is Necessary*, 93 U Det Mercy L Rev ___ (2016).

App 678, 607; 762 NW2d 529 (2008) (stating that the plaintiff in a commercial context could pursue a mere continuation theory at trial); *Lakeview Commons Ltd Partnership v Empower Yourself, LLC*, 290 Mich App 503, 508-509; 802 NW2d 712 (2010) (same). Particularly relevant, the plaintiff in *RDM Holdings* was allowed to advance a mere continuation theory where the defendant had transferred its assets and obligations "in advance of bankruptcy." *RDM Holdings*, 281 Mich App at 707.

Our Supreme Court's decision in *Starks v Mich Welding Specialists, Inc*, does not mandate a different result:

> Where, as here, a successor corporation acquires the assets of a predecessor corporation and does not explicitly assume the liabilities of the predecessor, the traditional rule of corporate successor non-liability applies. See *Foster v Cone-Blanchard Machine Co*, 460 Mich 696, 702 (1999). *Because an exception designed to protect injured victims of defective products rests upon policy reasons not applicable to a judgment creditor*, the Court declines to expand the exception to the traditional rule set forth in *Turner v Bituminous Casualty Co*, 397 Mich 406 (1976), to cases in which the plaintiff is a judgment creditor. [*Starks v Mich Welding Specialists, Inc*, 477 Mich 922; 722 NW2d 888 (2006) (emphasis added).]

The *Starks* court expressly affirmed a case in which this Court considered whether the successor corporation was a sufficient "continuity of enterprise" between the successor and predecessor corporations. *Starks v Mich Welding Specialists, Inc*, unpublished opinion per curiam of the Court of Appeals, issued November 29, 2005 (Docket No. 257127), pp 4-5. The factors in that case did not support imposing successor liability. *Id*. at 5. Specifically, in that case, the predecessor corporation did not sell the assets—a foreclosing creditor did—the predecessor ceased operating *before* the assets were purchased, and the successor corporation did not hold itself out as a continuation of the previous corporation. *Id*.

In this case, *Starks* does not apply because there has been no intervening foreclosure, and this case involves the "mere continuation" exception. The plaintiff in *Starks* was attempting to pursue successor liability through a foreclosure and unrelated transfer of assets under a products liability-based exception. Such an expansion is not at issue in this case, where there has been no foreclosure (*i.e.*, the assets were transferred in advance of bankruptcy, like in *RDM Holdings*), and the case involves a different rule (*i.e.*, the mere continuation exception).

We also note that two federal cases, *Stramaglia v United States*, 377 Fed Appx 472, 475 (CA 6, 2010), and *CT Charleton & Assoc, Inc v Thule, Inc*, 541 Fed Appx 549, 551-552 (CA 6, 2013), recognize the ongoing viability of the mere continuity exception to successor non-liability in Michigan.[3] As Judge BOGGS stated in *CT Charlton & Assoc, Inc v Thule, Inc*, 541 Fed Appx

---

[3] Although this Court is not bound to follow federal decisions that interpret state law, we may view these decisions as persuasive authority. *Wormsbacher v Seaver Title Co*, 284 Mich App 1, 5; 772 NW2d 827 (2009).

549, 551-552 (CA 6, 2013), "A review of *Turner* . . . suggests that these are best understood as two independent exceptions, motivated by different policy concerns and applied in different circumstances." Judge BOGGS explained:

> In creating the 'continuity of the enterprise' doctrine, *Turner* modified one of the traditional 'limited exceptions' to successor liability to fit in the products liability context. But this modified exception was not the 'mere continuation' exception, which is only mentioned in passing in *Turner,* appearing in a list in a footnote. *Turner*, 244 NW2d at 877 n 3. Instead, *Turner* modified the de-facto-merger doctrine, a traditional exception that imposes successor liability when four requirements are met: 1) continuation of the enterprise, 2) continuity of shareholders, 3) ending of ordinary business operations by the seller, and 4) assumption of liabilities and obligations necessary for uninterrupted continuation of business operations by the purchaser. *Turner*, 244 NW2d at 879. After reviewing the policies underlying products-liability law, the court concluded that, in the products-liability context, the form of the acquisition is irrelevant to the question of liability. . . . As a result, the *Turner* court dropped the 'continuity of shareholders' element, requiring only elements 1, 3, and 4 of the de-facto-merger doctrine to establish successor products liability. *Id.* at 883. *The 'continuity of the enterprise' doctrine, therefore, is best read as a relaxation of the de-facto-merger doctrine in products-liability cases, not a redefinition of the 'mere continuation' exception.* The 'mere continuation' exception remains narrow, but retains its general applicability. [*Id.* at 552 (emphasis added).]

In this case, in the absence of any clear authority holding that the mere continuation exception has ceased to exist, we find these decisions persuasive. We conclude that the trial court in this case properly applied the mere continuation exception, which continues to exist as a traditional successor liability theory and allowed plaintiff to establish successor liability where Metro Title transferred its assets in advance of bankruptcy.

Metro Equity also asserts that the trial court erred by allowing plaintiff to proceed to trial on a continuation theory. We disagree.

A complaint must provide reasonable notice to the opposing party of the nature of the claims brought against it. *Dacon*, 441 Mich at 329. A trial court has the discretion to allow a party to amend a pleading at any time to conform to the proofs. MCR 2.118(C)(1). In this case, a review of the pleadings indicates that plaintiff's first amended complaint, filed in February 2014, alleged the theory on which plaintiff proceeded at trial in September and October 2014. We reject Metro Equity's argument that it lacked notice of plaintiff's theory.

We affirm.

/s/ Peter D. O'Connell
/s/ Jane E. Markey
/s/ Colleen A. O'Brien

-6-