# STATE OF MICHIGAN

# COURT OF APPEALS

RETAIL WORKS FUNDING LLC,

        Plaintiff-Appellant,

v

TUBBY'S SUB SHOPS INC. and JB
DEVELOPMENT LLC,

        Defendants-Appellees.

UNPUBLISHED
August 31, 2017

No. 332453
Oakland Circuit Court
LC No. 2015-148461-CB

Before: GADOLA, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Plaintiff, Retail Works Funding LLC, appeals as of right the trial court's order granting the motion for summary disposition filed by defendants, Tubby's Sub Shops Inc. (Tubby's) and JB Development LLC (JB Development), regarding plaintiff's claims of alter ego/successor liability and unjust enrichment arising from JB Development's purchase of a service mark previously held by Just Baked Shop LLC (Just Baked). The trial court also awarded defendants attorney fees and costs after concluding that plaintiff's claims were frivolous. We affirm.

## I. BACKGROUND FACTS

Just Baked was a bakery retail chain that owned several retail stores and franchised several additional stores in Michigan. Todd Turkin testified that he and his wife, Pam Turkin, co-founded Just Baked. In June 2015, plaintiff obtained a judgment against Just Baked in the amount of $184,241.62. At the time, Just Baked also owed hundreds of thousands of dollars of state and federal back taxes. According to plaintiff, by August 2015, Just Baked had closed all of its retail stores and only approximately four franchise locations remained open.

Defendants explained that Tubby's is in the business of "franchising independent businesses selling submarine style sandwiches and other related food products . . . ." According to defendants, JB Development was organized in May 2015, for the purpose of purchasing the "Just Baked" service mark. In June 2015, JB Development entered a "Service Mark Purchase Agreement" with Just Baked, in which Just Baked agreed to

> assign[], sell[], transfer[] and convey[] to [JB Development] its entire right, title
> and interest in and to the ["service mark 'Just Baked' with logo" (the Mark)] and
> the registration therefor . . . together with all of [Just Baked's] goodwill

-1-

symbolized by the Mark and any and all copyright and other intellectual property rights associated with the Mark . . . .

A third-party appraisal conducted earlier in the year concluded that the "estimate of value of the trademark of [Just Baked] as of January 31, 2015 was $3,000." JB Development agreed to pay $4,000 for the service mark. The state released its lien on the service mark to allow the sale, and the purchase money was distributed directly to the Michigan Department of Treasury.[1]

In August 2015, plaintiff filed a complaint asserting that defendants were liable for the money judgment it obtained against Just Baked under theories of alter ego/successor liability and unjust enrichment. Plaintiff alleged that JB Development was a holding company for Tubby's. Under its "Alter Ego/Successor Liability" claim, plaintiff alleged that defendants purchased "all of the assets of Just Baked," failed to pay fair consideration for the assets, failed to provide for the debt owed to plaintiff in the sale, and "are merely a continuation of Just Baked, as Tubby's will be carrying Just Baked products in its retail stores." Under its "Unjust Enrichment" claim, plaintiff asserted that defendants "cherry picked the only assets of any value from Just Baked as a means for all parties to evade Plaintiff's Judgment" and that inequity resulted because Just Baked was able to carry on its business without providing for the debt owed to plaintiff.

Defendants moved for summary disposition under MCR 2.116(C)(8) and (C)(10), arguing that JB Development purchased the service mark in an arms-length transaction and that the purchase did not involve any other assets held by Just Baked or the assumption of any of Just Baked's liabilities. Defendants further argued that plaintiff failed to set forth any facts showing that Tubby's had any relationship with Just Baked under the terms of the Service Mark Purchase Agreement. Defendants argued that plaintiff's unjust enrichment claim failed as a matter of law because JB Development purchased the service mark at a price above its fair-market value and Tubby's was not a participant in the transaction. Among other documents, defendants attached to their motion a copy of the Service Mark Purchase Agreement and the affidavit of Robert Paganes, a member and officer of JB Development and a shareholder and officer of Tubby's, who asserted that Tubby's did not purchase any of Just Baked's assets and that "the only asset JB purchased from [Just Baked] was its service mark."

Plaintiff argued in response that "Tubby's held itself out to the world as having 'merged with' or 'purchased' or 'acquired' Just Baked," attaching four articles from online news sources.[2]

---

[1] The Internal Revenue Service also discharged the service mark from its federal tax lien against Just Baked after finding that the "interest of the United States under the federal tax lien(s) against [Just Baked] in the following described property is, at present, valueless."

[2] A summary of these news articles is as follows:

> (1) From *Eater Detroit*, an article titled, "Tubby's Sandwiches Acquires Just Baked Cupcakes," stating that "Tubby's . . . has acquired a majority stake in Just Baked cupcakes, the company announced in a pun-filled statement for *Crain's*."

Plaintiff argued that the transaction between Just Baked and defendants amounted to a de facto merger and that defendants failed to pay sufficient consideration for the assets they acquired. Plaintiff conceded that defendants paid $4,000 for the service mark, but argued that there was no evidence that defendants paid for the "recipes, rights to franchise, and rights to build franchises," which they apparently also acquired from Just Baked. Finally, plaintiff argued that the "elements [of unjust enrichment] are easily applied to the case at hand" because defendants received a benefit in "their purchase of Just Baked" while plaintiff had no recourse against Just Baked.

Two weeks later, plaintiff filed a supplemental brief to which it attached a press release stating that "Tubby's purchased the Just Baked trademark, product recipes and distribution rights and will begin supplying cupcakes to Tubby's locations in the next few months." Plaintiff also attached the deposition testimony of Todd Turkin, taken in a separate case, in which he explained that the "nature of the sale to Tubby's" included intellectual property rights, franchise rights, distribution rights, and recipes. Turkin explained that his wife, Pam Turkin, entered a consulting agreement in which she agreed to "put together recipes, pick out equipment, design the layout from an aesthetic as well as functional standpoint for the new chain of Just Bakeds" in return for a share of the royalties and franchise fees.

The trial court issued an opinion and order granting defendants' motion for summary disposition under MCR 2.116(C)(10). Citing the factors from *Turner v Bituminous Cas Co*, 397 Mich 406; 244 NW2d 873 (1976), the trial court concluded that defendants could not be held liable for plaintiff's judgment because the evidence showed that JB Development only purchased a single asset from Just Baked. Further, the court concluded that defendants purchased the service mark at a price above fair-market value, so they did not receive any unjust benefit that could establish a claim of unjust enrichment. In rendering its decision, the trial court explained that it did not consider plaintiff's supplemental brief because the "Court rules do not [allow] such a brief, and Plaintiff did not seek leave of the Court to file the same." The court further ordered that defendants could file a motion for sanctions.

---

(2) From *Crain's Detroit Business*, an article titled, "For Dessert, Tubby's Buys Just Baked Cupcakes," stating that "[Tubby's] has acquired most assets of the Just Baked gourmet cupcake business," that the "Just Baked deal covers the trademarks, recipes and rights to franchise future locations—as well as installing them—in existing Tubby's locations," and that "Just Baked founders Todd and Pam Turkin will continue to consult with Tubby's[.]"

(3) From *CBS Detroit*, an article titled, "Tubby's Buys 'Just Baked' Cupcakes Brand," stating that the "company says it's acquired Just Baked Cupcakes and plans to sell the frosted treats in sub shops."

(4) From *Detroit News*, an article titled, "Tubby's Buys Rights to Just Baked Cupcakes Brand," stating that the "sandwich chain has acquired the Just Baked line of cupcakes and desserts and will be incorporating them into its restaurants in the next few months."

Plaintiff moved for reconsideration, arguing that the court should have considered its supplemental brief because plaintiff did not obtain Turkin's deposition testimony until after the close of discovery in the current case due to his failure to appear at a creditor's exam, which forced plaintiff to seek a warrant for Turkin's arrest in a separate case and resulted in the 48th District Court ordering Turkin to appear for a deposition in February 2016. Plaintiff also argued that the trial court wrongly applied the "continuity of the enterprise" factors as "prerequisites rather than guidelines," and erroneously concluded that defendants purchased only a single asset, the service mark, because "a trademark cannot be sold independent of the business to which it relates." Accordingly, plaintiff argued that the court should have considered the sale of the service mark along with the consulting agreement referenced by Todd Turkin in his deposition testimony. In an amended motion for reconsideration, plaintiff provided a copy of the consulting agreement executed between JB Development and Pam Turkin, in which she agreed, among other things, to provide development assistance for two new Just Baked retail stores, to develop new recipes for baked goods, to disclose Just Baked's current recipes to JB Development, and to provide assistance on an as-needed basis for the first ten new franchise locations.

Meanwhile, defendants filed a motion for sanctions, costs, and attorney fees pursuant to MCR 2.114 and MCL 600.2591. At a hearing on defendants' motion, the trial court asserted that plaintiff's claims "had no basis in fact or law," and thereafter issued an order awarding defendants $10,583.92 in attorney fees and costs. The trial court also denied plaintiff's motion for reconsideration, concluding that it raised the same issues previously decided by the court.

## II. SUMMARY DISPOSITION

On appeal, plaintiff argues that the trial court erred by granting defendants' motion for summary disposition because plaintiff presented sufficient evidence to establish a genuine issue of material fact regarding whether there was a "basic continuity of the enterprise" between Just Baked and defendants. We review de novo a trial court's grant or denial of summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion for summary disposition under MCR 2.116(C)(10), courts consider the affidavits, pleadings, depositions, admissions, and documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). A trial court may grant the motion if the evidence shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Id.*

### A. SUCCESSOR LIABILITY

Under the traditional rule of successor liability applied in Michigan, the nature of a transaction determines whether a predecessor corporation's liability binds a successor. *Foster v Cone-Blanchard Machine Co*, 460 Mich 696, 702; 597 NW2d 506 (1999). "If the acquisition is accomplished by merger, with shares of stock serving as consideration, the successor generally assumes all [of] its predecessor's liabilities." *Id.* "However, where the purchase is accomplished by an exchange of cash for assets, the successor is not liable for its predecessor's liabilities unless one of five narrow exceptions applies." *Id.* The five exceptions are as follows:

(1) where there is an express or implied assumption of liability; (2) where the transaction amounts to a consolidation or merger [de facto merger]; (3) where the

-4-

transaction was fraudulent; (4) where some of the elements of a purchase in good faith were lacking, or where the transfer was without consideration and the creditors of the transferor were not provided for; or (5) where the transferee corporation was a mere continuation or reincarnation of the old corporation. [*Id.* (quotation marks and citations omitted).]

Of these exceptions, the parties discuss on appeal only the "de facto merger" exception, the "mere continuation" exception, and another exception, the "continuity of the enterprise" exception, which we will address in turn.

### 1. DE FACTO MERGER

Michigan courts will find a de facto merger when the following factors are established:

(1) There is a continuation of the enterprise of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations.

(2) There is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation.

(3) The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible.

(4) The purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation. [*Craig v Oakwood Hosp*, 471 Mich 67, 97-98; 684 NW2d 296 (2004), citing *Turner*, 397 Mich at 420.]

A de facto merger will not be found when a successor purchases the predecessor's assets with cash rather than stock because a cash transaction breaks the "continuity of shareholders" factor. See *Craig*, 471 Mich at 98 ("This transaction is not a de facto merger simply because . . . the purchasing corporation . . . paid in cash rather than stock.").

### 2. MERE CONTINUATION

The Michigan Supreme Court recognized the "mere continuation" exception over a century ago in *Chase v Mich Tel Co*, 121 Mich 631; 80 NW 717 (1899), but there remains some ambiguity regarding what factors courts should apply when assessing whether a successor corporation is a "mere continuation" of its predecessor. In *Pearce v Schneider*, 242 Mich 28, 31; 217 NW 761 (1928), our Supreme Court concluded that a successor corporation was "a reincarnation of the old" when the "stockholders were the same," the "corporate purpose was to conduct the same business," and all of "the assets of the former corporation were turned over as a basis for the issue of stock." In *Shue & Voeks, Inc v Amenity Design & Mfg, Inc*, 203 Mich App 124, 128; 511 NW2d 700 (1993), this Court held that a new corporation was not a "mere continuance of the old" when "[t]here was no continuity of ownership, . . . the number of full-

time employees was reduced from approximately thirty to four, and the focus of the business changed from primarily manufacturing to primarily sales and marketing."

In unpublished opinions,[3] this Court also analyzed additional factors when assessing whether a successor corporation was a mere continuation of its predecessor. For instance, in *Ferguson v Glaze*, unpublished opinion per curiam of the Court of Appeals, issued February 5, 2008 (Docket No. 268586); slip op at 6-7, this Court concluded that a successor corporation was not a mere continuation of its predecessor when the successor retained several of the predecessor's core clients and two of the predecessor's employees, but the corporations lacked common directors, most of the predecessor's assets were sold to third parties, and the corporations performed different kinds of work in the environmental field. Then, in *Gougeon Bros, Inc v Phoenix Resins, Inc*, unpublished opinion per curiam of the Court of Appeals, issued February 8, 2000 (Docket No. 211738); slip op at 3, this Court held that a successor corporation was a mere continuation of its predecessor when it purchased the predecessor's assets at a price below fair-market value, the same two persons were equal shareholders in both corporations, the corporations conducted business at the same address, the company mission remained the same, the successor agreed to pay any currently due invoices, and the successor notified the predecessor's distributors that the predecessor's product was now its own.

Although not binding on this Court,[4] in *In re Clements Mfg Liquidation Co*, 521 BR 231, 258 (2014), the United States Bankruptcy Court for the Eastern District of Michigan reviewed *Pearce*, *Shue*, *Ferguson*, and *Gougeon Bros* and concluded that, under Michigan law, courts apply a "totality of the circumstances" test, with the "only indispensable prerequisites to application of the [mere continuation] exception appear[ing] to be common ownership and a transfer of substantially all assets." The court went on to suggest that, "[b]eside these two factors, the most important consideration appears to be the nature of the business performed by the successor corporation—that is, whether its main corporate purpose was to conduct the same business as its predecessor." *Id.* (quotation marks and citation omitted).

### 3. CONTINUITY OF THE ENTERPRISE

The Michigan Supreme Court established the "continuity of the enterprise" exception in 1976 when it decided *Turner*, 397 Mich at 429-430. In *Turner*, our Supreme Court determined that it was inequitable to limit the right of a plaintiff presenting a products liability claim to recover from a successor corporation merely because the successor engaged in a cash-for-assets transfer, while the same plaintiff would be able to recover from the successor corporation if the transaction amounted to a merger. *Id.* at 422-423. The *Turner* Court summarized the elements of a de facto merger and modified them to account for the fact that the sale of a product will rarely involve shareholders. *Id.* at 420, 430. The Court thus created the "continuity of the

---

[3] Although unpublished opinions are not binding precedent, they may be considered instructive or persuasive. *Sau-Tuk Indus, Inc v Allegan Co*, 316 Mich App 122, 137; 892 NW2d 33 (2016).

[4] The opinions of lower federal courts are not binding on state courts, but may be considered persuasive authority. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

enterprise" exception, which turns on whether (1) the enterprise continues through retention of key personnel, assets, and general business operations, (2) the predecessor corporation ceases ordinary business operations, liquidates, and dissolves, (3) the successor corporation assumes any liabilities and obligations necessary to continue the normal business operations of the predecessor corporation, and (4) the successor corporation holds itself out to the world as the effective continuation of the predecessor corporation. *Id.* at 430.

In *Starks v Mich Welding Specialists, Inc*, 477 Mich 922, 922; 722 NW2d 888 (2006), our Supreme Court effectively limited the "continuity of the enterprise" exception to products liability cases. The Court explained, "Because an exception designed to protect injured victims of defective products rests upon policy reasons not applicable to a judgment creditor, the Court declines to expand the exception to the traditional rule set forth in [*Turner*] to cases in which the plaintiff is a judgment creditor." *Id.*; see also *Turner*, 397 Mich at 416 ("This is a products liability case first and foremost.").

Plaintiff argues that the "mere continuation" and the "continuity of the enterprise doctrine" are one and the same. And indeed, there is some Michigan case law that would support this position. In *RDM Holdings, LTD v Continental Plastics Co*, 281 Mich App 678, 718; 762 NW2d 529 (2008), this Court analyzed *Turner* in the context of a successor liability claim posed by a creditor and stated, "[T]he continuing enterprise theory (mere continuation or reincarnation of the old corporation) is the only theory that can be pursued by plaintiffs at trial." Likewise, in *Lakeview Commons v Empower Yourself*, 290 Mich App 503, 507; 802 NW2d 712 (2010), this Court conflated the two exceptions by explaining the "mere continuation" doctrine by setting forth the factors of the "continuity of the enterprise" doctrine articulated in *Turner*.

In 2016, however, this Court clarified in *Commonwealth Land Title Ins Co v Metro Title Corp*, 315 Mich App 312, 320-322; 890 NW2d 395 (2016), that the "mere continuation" doctrine and the "continuity of the enterprise" doctrine are separate and distinct exceptions to the general rule of successor non-liability, with only the former applying to judgment creditors. The Court explained, "The 'continuity of the enterprise' doctrine . . . is best read as a relaxation of the de-facto-merger doctrine in products-liability cases, not a redefinition of the 'mere continuation' exception. The 'mere continuation' exception remains narrow, but retains its general applicability." *Id.* at 321 (quotation marks, citation, and emphasis omitted).

## B. DISCUSSION

On appeal, plaintiff only argues that the trial court erred by granting defendants' motion for summary disposition because plaintiff presented sufficient evidence demonstrating that the "continuity of the enterprise" exception applied as between Just Baked and defendants. Considering our Supreme Court's decision in *Starks*, 477 Mich at 922, and this Court's decision in *Commonwealth*, 315 Mich App at 320-322, Michigan case law provides that the "continuity of the enterprise" doctrine does not apply in cases involving judgment creditors. Because plaintiff failed to argue or set forth the applicable law regarding the other exceptions, we conclude that plaintiff abandoned any claim of error regarding the other exceptions. See *Villadsen v Mason Co Rd Comm*, 268 Mich App 287, 303; 706 NW2d 897 (2005) ("A party who fails to brief the merits of an alleged error has abandoned the issue on appeal.").

Nonetheless, even addressing the other exceptions mentioned by the parties, plaintiff failed to present evidence sufficient to withstand defendants' motion for summary disposition.[5] The "de facto merger" exception does not apply because JB Development acquired the service mark through a cash payment. See *Craig*, 471 Mich at 98 ("This transaction is not a de facto merger simply because . . . the purchasing corporation . . . paid in cash rather than stock."). The "mere continuation" exception also does not apply because plaintiff failed to present any evidence of common ownership between Just Baked and defendants or evidence that defendants acquired substantially all of Just Baked's assets.[6] See *In re Clements*, 521 BR at 258 (noting that the "indispensable prerequisites to application of the [mere continuation] exception appear to be common ownership and a transfer of substantially all assets").

Plaintiff argues that the trial court erred by concluding that Just Baked could transfer its service mark without simultaneously transferring the business with which the mark was associated. Plaintiff is correct that a trademark derives value only through its connection with the goods or services with which it is used. *Detroit Creamery Co v Velvet Brand Ice Cream Co*, 187 Mich 312, 316; 153 NW 664 (1915). A trademark cannot be sold or assigned apart from the goodwill it symbolizes. *Id.* at 316-317 ("[I]t would be impossible to transfer the property [or services] with which the trade-mark was connected and retain title in the trade-mark separate and distinct from the property [or services]."). Any sale or assignment of a trademark should recite that the goodwill associated with the mark is assigned to the purchaser. See 15 USC 1060(a)(1) ("A registered mark or a mark for which an application to register has been filed shall be assignable with the good will of the business in which the mark is used, or with that part of the good will of the business connected with the use of and symbolized by the mark."). However, recitation of a transfer of goodwill alone is not enough, and a purchaser must also use the mark

---

[5] As a preliminary matter, we note that we must limit our review of the evidence to that which was properly presented before the trial court at the time it decided the motion. *Peña v Ingham Co Rd Comm*, 255 Mich App 299, 313 n 4; 660 NW2d 351 (2003). The trial court refused to consider plaintiff's supplemental brief, which contained Todd Turkin's deposition testimony and referenced the consulting agreement between JB Development and Pam Turkin. Plaintiff did not raise a claim of error regarding the trial court's exclusion of this evidence in its statement of the questions presented, thus abandoning any error on appeal. See *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 221; 761 NW2d 293 (2008). Accordingly, we decline to consider any evidence plaintiff presented in its supplemental brief or thereafter.

[6] The fact that Pam Turkin agreed to work with defendants in a consulting capacity does not represent that she held an ownership interest in either of the two entities. Further, plaintiff did not present evidence regarding the consulting agreement until after the deadline for filing its response to defendants' motion for summary disposition, and did not present the consulting agreement itself until after the trial court issued its decision granting defendants' motion. Plaintiff argues that defendants misrepresented the nature of their relationship with Just Baked in their answers to interrogatories and improperly failed to produce the consulting agreement during discovery. Having reviewed the record, we see no evidence that defendants misrepresented what JB Development purchased from Just Baked, and there is no indication that plaintiff ever requested the consulting agreement before the close of discovery.

in relation with the same or similar products or services to avoid perpetrating a fraud upon the public. See *Detroit Creamery*, 187 Mich at 317 ("An attempt to use such trade-mark in connection with some other business than that to which it was attached would be clearly . . . a fraud and deception upon the public as representing goods [or services] as emanating from the company which originally adopted the mark[.]").

In this case, the Service Mark Purchase Agreement stated that Just Baked was transferring "right, title and interest in and to the ["service mark 'Just Baked' with logo" (the Mark)] and the registration therefor . . . together with all of [Just Baked's] goodwill symbolized by the Mark . . . ." Defendants intended to continue using the service mark in connection with the production of baked goods similar to the function previously performed by Just Baked, as evidenced by the press releases and the consulting agreement with Pam Turkin. Plaintiff cites no authority to indicate that purchasing a service mark and its associated goodwill and then using that mark to perform the same or similar services imposes liability on the purchasing corporation for the debts of the corporation that previously held the service mark.

Plaintiff seemingly argues that the transaction represented a continuation of Just Baked because defendants necessarily had to obtain the recipes of Just Baked and/or the services of Pam Turkin in order to avoid perpetrating a fraud upon the public by using the service mark, but they did not outright purchase the business or recipes and did not hire Pam Turkin as an employee. Instead, defendants obtained Pam Turkin's services and the Just Baked recipes by executing the consulting agreement. Again, however, plaintiff offered no evidence of the consulting agreement at the time the trial court decided defendants' motion for summary disposition, and it offers no authority on appeal suggesting that the manner in which defendants structured their agreement with Just Baked and Pam Turkin was fraudulent or illegal. Under the circumstances, plaintiff has not shown that the trial court erred by granting defendants' motion for summary disposition.

## III. SANCTIONS

We review for clear error a trial court's finding that an action is frivolous. *In re Attorney Fees & Costs*, 233 Mich App 694, 701; 593 NW2d 589 (1999). "A trial court's decision is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id.*

Under MCR 2.114(F), "a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2)." MCR 2.625(A)(2) states, "[I]f the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591." MCL 600.2591 states the following:

> (1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

(2) The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees.

Further, MCL 600.2591(3) defines "frivolous" to mean:

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit.

The trial court stated that it was awarding sanctions because plaintiff's case "never should've been brought" because it "had no basis in fact or law." To establish a claim of unjust enrichment, a plaintiff must demonstrate "(1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party." *Karaus v Bank of New York Mellon*, 300 Mich App 9, 23; 831 NW2d 897 (2012). Plaintiff did not allege or present any evidence that it conferred a benefit on defendants. Therefore, plaintiff's unjust enrichment claim was devoid of arguable legal merit and the trial court did not clearly err by awarding sanctions regarding this claim.

Although plaintiff labeled its second claim "Alter Ego/Successor Liability," it is clear from reading the complaint as a whole that plaintiff was only raising a claim of successor liability.[7] As discussed earlier in this opinion, none of the exceptions to the general rule of successor non-liability under Michigan law would apply to the facts of this case. Therefore, we

---

[7] See *Adams v Adams*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007) (explaining that this Court is not bound by the labels assigned by a party when determining the nature of a claim).

are also not persuaded that the trial court was clearly mistaken when it decided to impose sanctions regarding plaintiff's successor liability claim.[8]

Affirmed.

/s/ Michael F. Gadola
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood

---

[8] Defendants argue that they should be awarded damages because plaintiff's appeal is vexatious. MCR 7.216(C) addresses awards of damages for vexatious appellate proceedings and states that actual or punitive damages may be awarded by this Court "on its own initiative or on the motion of any party filed under MCR 7.211(C)(8)[.]" MCR 7.211(C)(8) states that a party's request for damages must be made in a motion "at any time within 21 days after the date of the order or opinion that disposes of the matter that is asserted to have been vexatious." Therefore, defendants' request for damages is untimely. We decline to raise this issue on our own initiative.