*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL ANTHONY MILLER and MCKEA MILLER,

　　　　　Plaintiffs-Appellants,

v

WB HOLDINGS, LLC, AIRTIME TRAMPOLINE PARK TROY, LLC, AIRTIME TRAMPOLINE, LLC, MICHIGAN AIRTIME HOLDINGS, LLC, MICHIGAN AIRTIME I, LLC, MICHIGAN AIRTIME II, LLC, MICHIGAN AIRTIME III, LLC, and SPRING LOADED I, LLC,

　　　　　Defendants-Appellees,

and

DOES, TRAMPOLINE PARKS AND SUPPLIES, LLC, CC IMAGE GROUP, INC., doing business as CC IMAGE SPECIALTIES, ROBERT WALZ, WALZ ENGINEERING, LLC, NORBERTS ATHLETIC PRODUCTS, INC., NETTING PUCUDA, INC., and PUCUDA, INC.,

　　　　　Defendants.

UNPUBLISHED
June 20, 2019

No. 341139
Oakland Circuit Court
LC No. 2016-152291-NO

Before: BECKERING, P.J., and CAVANAGH and RONAYNE KRAUSE, JJ.

PER CURIAM.

-1-

Plaintiffs, Michael Anthony Miller and his wife, McKea Miller,[1] appeal as of right the October 4, 2017 order granting summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact) in favor of defendants WB Holdings, LLC, and Airtime Trampoline Park Troy, LLC,[2] in this personal injury action. Plaintiffs also appeal the trial court's August 31, 2017 order granting summary disposition pursuant to MCR 2.116(C)(10) in favor of defendants Airtime Trampoline, LLC, Michigan Airtime Holdings, LLC, Michigan Airtime I, LLC, Michigan Airtime II, LLC, Michigan Airtime III, LLC, and Spring Loaded I, LLC.[3] We affirm.

McKea took Michael to Airtime Troy on July 6, 2013, as a surprise for his birthday. After jumping on a trampoline for a period of time, Michael successfully completed a back flip and landed on his feet on a trampoline in the area of the park known as "High Fidelity." After bouncing for a few seconds, Michael then unsuccessfully attempted to complete a second back flip and suffered injuries as a result of landing on his neck and back. Plaintiffs thereafter brought this lawsuit raising numerous counts against numerous defendants. As relevant to this appeal, plaintiffs raised claims of negligence and premises liability against Airtime Troy. Plaintiffs primarily asserted that Airtime Troy used defective springs in its trampoline park and that missing or broken springs caused a "soft spot" on the trampoline on which Michael was jumping that prevented him from achieving the lift necessary to successfully complete a back flip. Plaintiffs also alleged that Michael was permitted to jump in the High Fidelity area, which was designed for 8- to 13-year-old patrons, and that he was not informed of the risks of jumping on a trampoline. Plaintiffs alleged that Airtime Trampoline, Michigan Airtime Holdings, Michigan Airtime I, Michigan Airtime II, Michigan Airtime III, and Spring Loaded I had successor liability for plaintiffs' claims.[4]

The asset purchaser defendants moved for summary disposition of plaintiffs' claims on the ground that they could not be held liable for Michael's injuries because none of the entities were involved in the operation of Airtime Troy or had an ownership interest in Airtime Troy on

---

[1] McKea Miller's claim for loss of consortium arises out of the injuries sustained by her husband, Michael Anthony Miller, and is derivative of her husband's personal injury claims. We will refer to Mr. and Mrs. Miller collectively as "plaintiffs," while Michael Anthony Miller and McKea Miller will be referred to by their first names.

[2] WB Holdings, LLC, and Airtime Trampoline Park Troy, LLC, will be collectively referred to as "Airtime Troy."

[3] Airtime Trampoline, LLC, Michigan Airtime Holdings, LLC, Michigan Airtime I, LLC, Michigan Airtime II, LLC, Michigan Airtime III, LLC, and Spring Loaded I, LLC, will be collectively referred to as the "asset purchaser defendants."

[4] In 2014, Airtime Troy sold its personal and intellectual property to Michigan Airtime Holdings and Michigan Airtime I. The assets were held by Airline Trampoline, LLC, a holding company. The sale of the assets did not involve the assumption of liabilities except for certain enumerated exceptions, none of which included plaintiffs' claims. Michigan Airtime Holdings and Michigan Airtime I subsequently sold the assets acquired from Airtime Troy to Spring Loaded I. Spring Loaded I did not acquire the liabilities of Michigan Airtime Holdings and Michigan Airtime I.

-2-

the date of the incident. Plaintiffs admitted in response to the motion that the assumed liabilities set forth in the asset purchase agreement between Airtime Troy and Michigan Airtime Holdings and Michigan Airtime I did not include plaintiffs' claims. Plaintiffs maintained, however, that the asset purchaser defendants were subject to successor liability because they assumed the liability and obligations of Airtime Troy that were "necessary for continuation of the normal business operations of Airtime Troy." The trial court granted the asset purchaser defendants' motion, finding that the asset purchaser defendants did not have possession or control over Airtime Troy at any relevant time and that Michigan Airtime Holdings and Michigan Airtime I did not assume liability for plaintiffs' claims when they purchased the personal and intellectual property of Airtime Troy.

Airtime Troy[5] moved for summary disposition based upon (1) the open and obvious nature of the dangers of using a trampoline that is not unreasonably dangerous, and (2) Michael's inherent consent to such dangers. Airtime Troy argued that an average user of ordinary intelligence would have been able to discover that a possibility of falling on a trampoline exists and that Michael was not required to confront a dangerous hazard in flipping while jumping but, rather, he chose to undertake the flip while engaged in the use of the trampoline. Airtime Troy also argued that when Michael engaged in the recreational activity of jumping on a trampoline he voluntarily subjected himself to, and consented to, certain risks inherent in the activity and that an instructor or supervisor would not have removed the danger of Michael falling or landing awkwardly when he engaged in the act of jumping or flipping on a trampoline.

Plaintiffs filed a response to the motion and primarily asserted that Michael's injuries were the result of "dangerous, missing, broken, stretched, defective spring conditions," that Airtime Troy had notice of the "continuing broken spring problem," and that the "spring problem was not open and obvious." Plaintiffs also asserted that Airtime Troy's employees allowed Michael to "perform flips on a trampoline bed that was too small" and that Airtime Troy was "deficient" on the day of the incident in the following ways: (1) allowing Michael to trampoline without "receiving any in[-]person safety information from Airtime employees, reviewing any safety signs, or viewing any safety videos"; (2) allowing Michael to use a trampoline that "is for children 8-13 years" of age; (3) failing to advise Michael to use a trampoline court that was appropriate for his age, weight, and height; and (4) failing to have safety and training manuals that were in compliance with trampoline industry guidelines.

In reply, Airtime Troy argued that plaintiff failed to provide any evidence that the trampoline that Michael was using at the time of the incident had missing or broken springs. Airtime Troy argued that the factual evidence set forth by plaintiffs to support their argument that the trampoline had missing or broken springs was based upon the speculative, subjective, and unsupported opinions of plaintiffs' proposed expert, Dr. Marc Rabinoff.

---

[5] The motion was filed before the trial court's dismissal of the claims against the asset purchaser defendants and, therefore, was also filed on behalf of the asset purchaser defendants. By the time of the hearing on the motion, WB Holdings and Airline Trampoline Park Troy were the remaining moving defendants.

During a hearing on Airtime Troy's motion for summary disposition, the trial court asked plaintiffs' counsel to identify the evidence that plaintiffs relied upon to support the factual allegation that there were missing or broken springs on the trampoline on which Michael was jumping at the time of his injury. Plaintiffs' counsel identified an inspection performed by Dr. Rabinoff in May 2017 in which he determined that numerous springs were missing from trampolines in the park in May 2017, as well as the deposition testimony of William Wannemacher, a co-owner of Airtime Troy at the time of the incident, that broken springs were a continuous maintenance issue in the trampoline park during 2013. Plaintiffs' counsel indicated that Dr. Rabinoff concluded, after examining video footage of Michael's second attempt to perform a back flip, that a soft spot caused by missing or broken springs prevented Michael from gaining the lift he needed in order to "make his rotation."

The trial court granted summary disposition in favor of Airtime Troy. The court found that plaintiffs failed to present evidence to create an issue of fact with respect to their allegation that Michael's injury was proximately caused by missing or broken springs on the trampoline on which Michael was jumping at the time of the incident. Specifically, the trial court found as follows:

> Although Dr. Rabinoff testified that it "looked like" springs were missing based on the fact that Mr. Miller did not land on his feet after the second flip, he does not explain or rationalize the basis for this opinion.[6] Later in his deposition, on . . . transcript pages 34 and 40, Dr. Rabinoff acknowledged that he had "no idea if there was anything wrong with that trampoline." As noted at oral arguments, Dr. Rabinoff did not examine the trampoline in question until four years after the injuries occurred. Thus, any purported defects he observed at the time of the inspection are not relevant to this Court.
>
> Importantly, William Wannemacher, the owner of the trampoline park at the time Mr. Miller was injured, repeatedly denied during his deposition that there were issues with trampolines "falling apart." Although he agreed that, on average, 20 trampoline springs broke each day, he disagreed that this made the trampolines dangerous and noted that there were "probably 10,000 springs" throughout the entire park. He testified that any broken or damaged springs were replaced twice each week. Importantly, page 146 of Mr. Wannemacher's deposition transcript establishes that, when he was asked directly if he knew whether the trampoline in question had any broken or missing springs at the time of Mr. Miller's injuries, he answered "[n]o idea." As such, Plaintiffs' theory that springs were missing from the trampoline is entirely based on speculation, which is not sufficient to establish a question of fact as to proximate cause. The Court agrees with Defendants that the video establishes that Mr. Miller was injured because he landed on his neck or head after failing to successfully land a flip.

---

[6] The trial court noted that Dr. Rabinoff is not an engineer or a medical doctor but, rather, is a " 'trampolinist and a gymnast who has been on trampolines for 40 years' and that he teaches 'fundamentals of movement which is basic biomechanics.' "

The trial court also found the danger associated with jumping on a trampoline is open and obvious to an average user of ordinary intelligence and that plaintiffs failed to establish a question of fact as to whether the open and obvious danger of using the trampoline imposed a uniquely high likelihood of harm or severity of harm and was unavoidable. Lastly, the trial court found that plaintiffs abandoned their contention that Airtime Troy was "negligent in a myriad of other ways."

## I. OTHER ALLEGATIONS OF NEGLIGENCE

Plaintiffs first argue that the trial court erred in concluding that plaintiffs failed to cite record support for their contention that Airtime Troy was "negligent in a myriad of other ways." We disagree.

This Court reviews de novo a trial court's decision regarding a motion for summary disposition to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion for summary disposition made under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Id*. at 120. The Court considers all affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*. MCR 2.116(G)(4) states:

> A motion under subrule (C)(10) must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact. When a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her.

This rule requires the adverse party to set forth specific facts at the time of the motion showing a genuine issue for trial. *Maiden*, 461 Mich at 121. A reviewing court should consider the substantively admissible evidence actually proffered by the opposing party. *Id*. When the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. *Id*. at 120.

In response to Airtime Troy's motion for summary disposition, plaintiffs asserted that Airtime Troy was negligent in a number of ways unrelated to the purported negligence involving missing or broken springs. However, plaintiffs merely announced their position without developing the arguments or providing citation to legal authority. Plaintiffs simply referred to the "attached" May 1, 2017 expert opinion of Dr. Rabinoff and Dr. Rabinoff's August 28, 2017 "corrected opinion supplement" in support of their additional allegations of negligence.[7] Dr. Rabinoff's May 1, 2017 opinion identified the documents that he reviewed "in preparation for

---

[7] Dr. Rabinoff's August 28, 2017 opinion supplement addressed only the open and obvious nature of the alleged defects in the trampoline.

testimony," and simply announced his conclusions without providing any factual support. Conclusory opinions are insufficient to establish a genuine issue of material fact, *SSC Assoc Ltd Partnership v Gen Retirement Sys*, 192 Mich App 360, 364; 480 NW2d 275 (1991), even when offered by a proposed expert.[8] Plaintiffs' argument in the trial court was stated in conclusory fashion, without citation to authority or sufficient explanation, and failed to demonstrate a material issue of fact with respect to the additional allegations of negligence. The trial court properly granted summary disposition of the additional allegations of negligence.

## II. OPEN AND OBVIOUS DANGER

Plaintiffs argue that the trial court erred by concluding that the danger associated with jumping on a trampoline is open and obvious. They argue that Airtime Troy was aware of the "failure of the springs" and that Airtime Troy attempted to mitigate the hidden danger caused by the defective springs by having patrons sign a waiver, but that Airtime Troy failed to have Michael sign a waiver.[9] Plaintiffs appear to be arguing that Airtime Troy had a duty to warn Michael of the hazard presented by broken or missing springs and breached its duty to warn of the missing or broken springs by failing to have Michael sign a waiver.[10] Plaintiffs did not present this argument in the trial court, and they have failed to provide relevant authority or to develop and support any cogent argument concerning this issue; therefore, they have abandoned it. See *Silver Creek Twp v Corso*, 246 Mich App 94, 99; 631 NW2d 346 (2001).[11]

## III. PROXIMATE CAUSE

Plaintiffs argue that they presented sufficient evidence to establish a genuine issue of material fact for trial with respect to whether missing or broken springs were the proximate cause of Michael's injuries. Plaintiffs did not produce evidence that springs were missing from, or

---

[8] Further, plaintiffs did not address the arguments raised in their response to Airtime Troy's motion for summary disposition during the hearing on the motion, where they focused on the issue of the springs. And, on appeal, plaintiffs continue to merely announce their position without offering any argument or evidence beyond a reference to Dr. Rabinoff's opinion.

[9] Airtime Troy employees told McKea that Michael had to electronically sign a waiver at a kiosk, but McKea went to the kiosk and signed Michael's name for him.

[10] Plaintiffs appear to be asserting that the purpose of the waiver that patrons must sign before use of the trampoline is to warn patrons of the dangers posed by missing or broken springs. There is no evidentiary support in the record for this assertion.

[11] Nonetheless, plaintiffs' argument in the trial court that the dangers associated with the trampoline on which Michael was jumping at the time of the incident were not open and obvious was premised upon their assertion that the trampoline had missing or broken springs that were hidden from view and that the missing or broken springs were the proximate cause of Michael's injuries. This theory, however, was based upon speculation and conjecture as plaintiffs failed to present evidence to present a genuine issue of fact with respect to whether the trampoline on which Michael was jumping had missing or broken springs on the day of the incident (see *infra*).

broken on, the trampoline at issue on the day of Michael's injury. Rather, plaintiffs presented speculation that springs were broken or missing from the trampoline based on Wannemacher's testimony that broken springs were a constant maintenance issue in the trampoline park in 2013. From this speculation, plaintiffs inferred that there was a soft spot on the trampoline caused by missing springs and that the soft spot prevented Michael from achieving the lift necessary to successfully complete a back flip. But "[a] party opposing a motion for summary disposition must present more than conjecture and speculation to meet its burden of providing evidentiary proof establishing a genuine issue of material fact." *Cloverleaf Car Co v Phillips Petroleum Co*, 213 Mich App 186, 192-193; 540 NW2d 297 (1995). The trial court correctly noted (1) that "there is no evidence in the record to support that the trampoline was missing springs in the area where Mr. Miller was jumping in the time before the injuries occurred"; (2) that Dr. Rabinoff acknowledged that he had "no idea if there was anything wrong with that trampoline"; (3) that any purported defects that Dr. Rabinoff observed at the time of the inspection four years after the incident were not relevant; and (4) that Wannemacher replied that he had "no idea" when asked directly if he knew whether the trampoline in question had any missing or broken springs on the date of the incident. At most, the evidence allowed only for conjecture or speculation that Michael's failure to complete the back flip may have occurred in relation to missing or broken springs. Speculation and conjecture are insufficient to create a question of disputed fact sufficient to survive a motion for summary disposition. *Id*.

## IV. FAILURE TO PRESERVE RECORDS

Plaintiffs argue that the trial court erred by finding that Airtime Troy's failure to preserve records of trampoline maintenance checklists did not prejudice plaintiffs. The trial court, however, made no such finding. The trial court declined to rule on plaintiffs' request for sanctions as a discovery violation because plaintiffs failed to submit a proper motion. The factual premise of plaintiffs' argument is erroneous and, therefore, plaintiffs' argument is misplaced.

## V. SUCCESSOR LIABILITY

Plaintiffs argue that the asset purchaser defendants are subject to successor liability. However, plaintiffs have abandoned this issue on appeal. This Court has made it clear that

> [a] party may not leave it to this Court to search for authority to sustain or reject its position. An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority. Argument must be supported by citation to appropriate authority or policy. An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue. [*Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 517; 892 NW2d 467 (2016) (quotation marks and citations omitted).]

Plaintiffs provide citation to the traditional exceptions for the general rule of corporate successor nonliability set forth in *Commonwealth Land Title Ins Co v Metro Title Corp*, 315 Mich App 312, 315-316; 890 NW2d 395 (2016):

Michigan follows the traditional rule of successor liability. *Foster* [*v Cone-Blanchard Machine Co*], 460 Mich [696,] 702; [597 NW2d 506 (1999)]. Under that rule, the nature of the transaction determines the potential liability of predecessor and successor corporations. *Id*. "If the acquisition is accomplished by merger, with shares of stock serving as consideration, the successor generally assumes all its predecessor's liabilities. However, where the purchase is accomplished by an exchange of cash for assets, the successor is not liable for its predecessor's liabilities unless one of five narrow exceptions applies." *Id*. The five exceptions are: (1) an express or implied assumption of liability; (2) de facto consolidation or merger; (3) fraud; (4) transfer lacking in good faith or consideration; or (5) where the transferee corporation was a mere continuation or reincarnation of the old corporation.

Plaintiffs argue that "the defendants, purchasers, are subject to successor liability because the purchasing entities meet at least one or more of the exceptions under the five exceptions," but they do not identify which exception they rely upon. Plaintiffs have simply announced their position and have failed to provide any analysis or argument. Therefore, plaintiffs have abandoned this issue on appeal. See *Bank of America, NA*, 316 Mich App at 517.[12]

## VI. CASE EVALUATION AWARD

Plaintiffs argue that the trial court erred by refusing to file plaintiffs' timely acceptance of the case evaluation award on the ground that the trial court had granted summary disposition of plaintiffs' claims in favor of defendants and closed the case. In support of this unpreserved argument, plaintiffs have submitted an affidavit on appeal from trial counsel Juanita G. Hughes in which she avers that case evaluation was conducted on September 28, 2017, and that acceptance of the case evaluation award was due on October 26, 2017. Hughes also averred that she attempted to personally file the acceptance of case evaluation form on October 26, 2017, and that the "Mediation/Case Evaluation Office would not permit" her to file the acceptance because the case had been dismissed on October 4, 2017. Plaintiffs' argument that the court wrongfully refused to accept their case evaluation acceptance form for filing is based entirely on an affidavit that is not part of the trial court record. "This Court's review is limited to the record developed

---

[12] Additionally, this issue is moot in light of our conclusion that the trial court properly granted summary disposition of plaintiffs' claims against Airtime Troy.

by the trial court and we will not consider references to facts outside the record." *Matouk v Mich Muni League Liability & Prop Pool*, 320 Mich App 402, 414; 907 NW2d 853 (2017) (quotation marks and citation omitted). Because there is no support in the trial court record for this argument, we decline to consider it.

Affirmed.


/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Amy Ronayne Krause